**PRESTON RIDGE FINANCIAL SERVICES CORPORATION,**
Appellant,

v.

**O. Jan TYLER, Appellee.**

**No. 05–89–01232–CV.**

Court of Appeals of Texas,
Dallas.

July 30, 1990.

Rehearing Denied Oct. 18, 1990.

Melissa Webb Essary, Dallas, for appellant.

Lawrence R. Maxwell, Jr., Dallas, for appellee.

Before STEWART, LAGARDE and BURNETT, JJ.

## OPINION

STEWART, Justice.

Preston Ridge Financial Services Corporation ("Preston Ridge") appeals the trial court's overruling of its motion for summary judgment against appellee, O. Jan Tyler, and the trial court's granting of Tyler's motion for summary judgment in Preston Ridge's suit against Tyler for damages under a guaranty agreement executed by Tyler. In two points of error, Preston Ridge complains that the trial court erred in overruling its motion for summary judgment and its motion for reconsideration because the guaranty agreement unambiguously

spells out the parties' intentions that foreclosure proceeds are to be applied first to the unguaranteed portion of the indebtedness and, therefore, Tyler's liability under the guaranty was not extinguished by the recovery of foreclosure proceeds in an amount less than the total indebtedness. In its third point, Preston Ridge contends the trial court erred in granting Tyler's motion for summary judgment because the trial court erroneously construed the guaranty agreement to provide that foreclosure proceeds should be applied so as to extinguish Tyler's liability as guarantor. We agree. Accordingly, we reverse the judgment of the trial court and render judgment in favor of Preston Ridge.

## FACTS

Preston Ridge is the owner and holder of a promissory note dated August 22, 1975, in the original principal amount of $1.5 million (the "note") executed by Tyler in his capacity as president of Diamond C Land & Cattle Company ("Diamond C"). Diamond C, acting through Tyler, simultaneously executed and delivered a deed of trust/security agreement (the "deed of trust"), conveying certain real property as security for the debt owed pursuant to the note. On August 22, 1975, Tyler also executed a guaranty under which he unconditionally guaranteed to pay "when due" to the owner and holder of the note all interest on the note and "that amount of principal indebtedness equal to the amount by which the sum of the outstanding principal balance of the indebtedness evidenced by the Note ... exceeds $735,000" (this amount referred to as the "guaranteed indebtedness").

The note went into default and, on or about October 11, 1988, Preston Ridge accelerated the entire indebtedness of $1,103,-555.99. When Diamond C failed to pay the accelerated demand, a substitute trustee sold the property secured by the deed of trust to Preston Ridge at a nonjudicial foreclosure sale for $735,000, the highest bid.[1] Preston Ridge credited the proceeds of the foreclosure sale ($735,000) against the total outstanding indebtedness and demanded

that Tyler pay the alleged guaranteed indebtedness of $368,555.99, which was the amount of the principal indebtedness in excess of $735,000 at the time of acceleration. Tyler refused to pay any amount because the outstanding indebtedness at the time Preston Ridge demanded payment from him was less than $735,000.

Preston Ridge sued Tyler to collect the alleged guaranteed indebtedness due under the guaranty. Each party filed a motion for summary judgment. Preston Ridge's motion for summary judgment alleged that Tyler's liability was fixed at the time of acceleration, when the outstanding indebtedness on the note totalled $1,103,555.99. Thus, argued Preston Ridge, Tyler was liable for $368,555.99, the amount of principal in excess of $735,000 due at that time. Tyler's motion for summary judgment alleged that his liability under his guaranty agreement had been extinguished because Preston Ridge had foreclosed on the collateral pursuant to the deed of trust and had credited the proceeds from that sale against the outstanding indebtedness before making demand on him to perform under the guaranty agreement and that, at the time Preston Ridge made demand upon him, the total outstanding principle indebtedness was $368,555.99, a sum less than $735,000. The trial court overruled Preston Ridge's motion for summary judgment and granted Tyler's motion; the trial court also overruled Preston Ridge's motion for reconsideration. Because our disposition of Preston Ridge's three points depends upon whether application of the foreclosure proceeds to the total outstanding indebtedness extinguished Tyler's obligations pursuant to the guaranty, we will discuss all three points together.

## STANDARDS FOR REVIEWING SUMMARY JUDGMENT

 Both parties may move for summary judgment under rule 166a of the Texas Rules of Civil Procedure. When both parties move for summary judgment, each party must carry his own burden, and neither can prevail because of the failure of

---

1. We note that Tyler has not pled inadequacy of the foreclosure price.

the other to discharge his burden. *The Atrium v. Kenwin Shops of Crockett,* 666 S.W.2d 315, 318 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). An order denying a motion for summary judgment is not appealable except, as here, when both parties have filed a motion for summary judgment and the court granted one of the motions and overruled the other. *Garcia v. City of Lubbock,* 634 S.W.2d 776, 780 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.).

The Texas Supreme Court has established the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975).

■ To establish a right to recover as a matter of law, the movant must prove conclusively all elements of his cause of action. *Plano Indep. School Dist. v. Oake,* 682 S.W.2d 359, 364 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 454 (Tex.1985). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). In a summary judgment case, the question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Summary judgment is proper in cases involving the interpretation of a writing when the writing is found to be unambiguous. *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.,* 700 S.W.2d 635, 638 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

## RULES OF CONTRACT CONSTRUCTION

■ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). This cardinal rule of construction applies to guaranty contracts as it does to other types of contracts. *Southwest Sav. Ass'n. v. Dunagan,* 392 S.W.2d 761, 767 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). The intention of the parties is discovered primarily by reference to the words used in the contract. *Id.* Further, to determine the parties' actual intent, courts should examine and consider the *entire writing* in an effort to harmonize and give effect to *all* the provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

■ Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *R & P Enters.,* 596 S.W.2d at 518. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker,* 650 S.W.2d at 393; *R & P Enters.,* 596 S.W.2d at 519. In construing an unambiguous contract, evidence of circumstances surrounding its execution may be considered. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981).

A contract is ambiguous only when, after the application of pertinent rules of interpretation to the face of the instrument, the contract remains reasonably susceptible to more than one meaning. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex.1951). It is with these general principles in mind that we examine the guaranty at issue here.

## RELEVANT PROVISIONS OF THE GUARANTY

The guaranty at issue provides in pertinent part as follows:

For value received and in order to induce JONES & INLOW, INC.[2] ("Lender") to loan up to $1,500,000 to DIAMOND C LAND & CATTLE COMPANY, a Texas corporation, ("Borrower"), which loan is evidenced by that certain Installment Note of even date herewith in the original principal amount of $1,500,000 executed by Borrower to the order of Lender ..., and secured by that certain Deed of Trust/Security Agreement of even date herewith executed by Borrower to Robert F. Inlow as Trustee ... it being understood that Lender would not be willing to make such loan without the execution of this Guaranty by the undersigned [Tyler] ("Guarantor"), Guarantor does hereby unconditionally guarantee to Lender and its successors and assigns the punctual payment when due of:

(a) all interest on the Note;

(b) that amount of principal indebtedness equal to the amount by which the sum of the outstanding principal balance of the indebtedness evidenced by the Note ... exceeds $735,000 (said interest and principal hereafter collectively referred to as the "guaranteed portion of the indebtedness"), and

(c) the punctual performance of any and all obligations of Borrower owed to Lender under the terms of the Deed of Trust ... Guarantor hereby agrees that if the Note is not paid by Borrower in accordance with its terms or if any sums which hereafter become due from Borrower to Lender under the Deed of Trust are not paid by Borrower in accordance with its terms, then immediately upon demand by Lender, Guarantor will pay to Lender the guaranteed portion of the indebtedness.

Guarantor hereby agrees that Lender may at any time without notice to Guarantor, either with or without consideration, surrender any property or other security of any kind or nature ... securing any indebtedness or liability hereby guaranteed; ... any such action by Lender shall not affect the liability of Guarantor hereunder. Except as specifically limited herein, this Guaranty unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer or agent of Borrower.

\* \* \* \* \* \*

Guarantor hereby waives and agrees not to assert or take advantage of:

(d) any defense based upon an election of remedies by Lender (including, without limitation, an election to proceed by non-judicial foreclosure) which destroys or otherwise impairs the subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement or both;

\* \* \* \* \* \*

(g) notice of presentment and demand for payment of any of the indebtedness or performance of obligations hereby guaranteed;

(h) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; and

(i) any and all other notices and legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

**2.** On August 22, 1975, Jones & Inlow, Inc., the original owner and holder of the note, assigned and conveyed to Washington Mutual Savings Bank the note and all liens and titles held by it. On October 31, 1988, Washington Mutual Savings Bank assigned the same interest to Preston Ridge.

This is a guarantee of payment and performance and not of collection. The liability of Guarantor under this Guaranty is independent of the obligations created under the Note and is not conditional or contingent upon the enforcement of any remedies against Borrower or any other person, nor upon the assertion of any lien right or realization upon any other security interest available to Lender. Guarantor waives any right to require that an action be brought against Borrower or any other person as a condition precedent to the enforcement of its obligations hereunder or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. If the guaranteed portion of the indebtedness is partially satisfied by reason of the election of Lender to pursue any of the remedies mentioned in this paragraph, Guarantor shall remain liable for the balance of the guaranteed portion of the indebtedness.

Subject to the provisions of the paragraph immediately following, Lender or its assigns shall grant such release at such time as Borrower delivers to Lender a rent roll certified under oath to be true and correct by Guarantor showing that monthly gross income has been received for at least three consecutive months from bona fide tenants (other than Guarantor) which if projected on an annual basis would equal or exceed $233,728 from the rental of not more than 27,120 square feet of the Garland Medical Tower Building under leases having an original term of more than 12 months.

Notwithstanding anything above to the contrary, Guarantor shall not be released from any liability hereunder if at the time of such release any default has occurred under the Note, Deed of Trust, Assignment of Rents or Assignment of Lease or any event has occurred which upon the giving of notices and expiration of the stated grace period constitutes a default.

If either Guarantors or Maker makes an assignment for the benefit of creditors, or if a receiver is appointed for any part of the Mortgaged Premises, or if either Guarantors or Maker is adjudicated a bankrupt, or if Guarantors or Maker institutes any proceedings under the Federal Bankruptcy Laws of the United States, then on the happening of any one of these events, the whole of said debt hereby guarenteed [sic] shall immediately [sic] become due and payable, at the option of Jones & Inlow, Inc. and Jones & Inlow, Inc. may proceed to enforce the terms hereof. . . .

## CONSTRUCTION OF THE GUARANTY

Although the parties agree that the guaranty is unambiguous, they disagree on the effect of its provisions. The dispute is over the proper interpretation of the guaranty agreement regarding the effect on the guaranteed portion of the principal indebtedness of applying foreclosure proceeds to the balance due on the note. Disagreement over the interpretation of an instrument does not make it automatically ambiguous, *Medical Towers v. St. Luke's Epis. Hosp.*, 750 S.W.2d 820, 822 (Tex.App.—Houston [14th Dist.] 1988, writ denied); likewise, uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract ambiguous. *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157. We agree that the guaranty agreement is unambiguous; thus its construction is a question of law for the court. *Coker*, 650 S.W.2d at 393.

We must consider the entire guaranty to determine the parties' intent regarding the proper application of the foreclosure proceeds. *Id.* The first paragraph of the guaranty provides that the guaranty was intended to "induce" the lender to loan up to $1.5 million to Diamond C, evidenced by an installment note and secured by a deed of trust/security agreement, and that the parties "understood that Lender would not be willing to make such loan without the execution of this Guaranty by the undersigned [Tyler]. . . ." This language clearly evidences that the lender's purpose in obtaining the guaranty was to supplement the pre-existing deed of trust/security agreement, thus attempting to secure the

entire indebtedness instead of only a portion of it. In harmonizing the provisions of the contract, terms stated earlier in an agreement must be favored over other subsequent terms. *Id.* Thus, we construe the guaranty in light of the parties' intent to make the lender whole if Diamond C defaulted.

It is undisputed that the guaranty provides that Tyler unconditionally guaranteed the punctual payment when due to the holder of the note (Preston Ridge) of (a) all interest on the note and (b) the outstanding principal balance on the note in excess of $735,000; the parties also agree that the guaranty states in subsection (c) that if Diamond C did not pay in accordance with the terms of the note or deed of trust, then immediately upon demand, Tyler would pay the guaranteed portion, consisting of (a) and (b) above.

Preston Ridge construes subsection (c) as providing that the amount of the guaranteed indebtedness is determined upon default by Diamond C and that the payment of the guaranteed amount is due upon demand. On the other hand, Tyler construes this subsection to mean that the amount of guaranteed indebtedness, as well as when his payment was due, is determined when demand was made upon him. He argues that Preston Ridge's interpretation would mean that only payments made by Diamond C would reduce the guaranteed indebtedness, although no such provision was set forth in the guaranty. He further asserts that the guaranty does not provide that Preston Ridge had the unilateral right to apply foreclosure proceeds against the unguaranteed portion first, leaving the remaining balance as guaranteed. We agree with Preston Ridge's construction for the following reasons.

Subsection (c) reads in pertinent part that Tyler unconditionally guaranteed when due:

(c) the punctual performance of any and all obligations of [Diamond C] owed to [Preston Ridge] under the terms of the Deed of Trust ... *Guarantor hereby agrees that if the Note is not paid by [Diamond C] in accordance with its*

*terms ..., then immediately upon demand by [Preston Ridge], Guarantor will pay to [Preston Ridge] the guaranteed portion of the indebtedness.*

Tyler specifically relies on the language "... then immediately upon demand by [Preston Ridge], Guarantor will pay...." He reasons that, since the only demand made by Preston Ridge on him was after the foreclosure proceeds had been applied, there was no guaranteed portion of the indebtedness remaining because, at that point, the outstanding principal balance of the note was below $735,000. However, no single provision taken alone, much less a single clause in a sentence, has controlling effect. We must consider and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393.

Tyler's interpretation renders meaningless the introductory language of the guaranty which evidences the parties' intent that the guaranty act as additional security to the deed of trust and as an additional inducement for the loan to Diamond C. If the collateral under the deed of trust applied first to the guaranteed portion of the debt, we would have to assume the parties intended at the time they executed the loan documents, that $735,000 of the $1.5 million note was to be in effect unsecured to the extent that proceeds from the collateral would not satisfy the entire debt and that any amount over $735,000 owing at the time of default was to be doubly secured in the first instance, with foreclosure proceeds to be applied only secondarily to the unguaranteed portion. This assumption flies in the face of the parties' acknowledgment of the pre-existing deed of trust/security agreement and the language establishing the parties' understanding that the lender would not be willing to make the loan (although it already had the deed of trust lien as security) without Tyler's guaranty and that the guaranty's purpose was to induce the lender to loan up to $1.5 million. We conclude that the clause relied upon by Tyler merely established the time when his payment under the guaranty was due and did not determine the point in

time when his liability under the guaranty arose.

Our conclusion is supported by other language in subsection (c). Tyler agreed to pay the guaranteed portion immediately upon demand if Diamond C did not pay the note according to its terms. This language requires examination of the terms of the note to ascertain Tyler's obligations. *Hopkins v. First Nat'l Bank*, 551 S.W.2d 343, 345 (Tex.1977) (per curiam).

The note provides that Diamond C's failure to pay any part of the principal or interest of the note when due "shall authorize [Preston Ridge] to declare the whole of the same due and payable and to immediately institute foreclosure." This provision clearly refutes Tyler's position that the amount of the principal balance is determined when demand for payment of the guaranteed indebtedness was made upon him. To the contrary, when, before the foreclosure sale, Preston Ridge accelerated the entire balance of the note ($1,103,-555.99), Diamond C became liable for the entire amount owed. Tyler became liable at the time of acceleration for the guaranteed indebtedness as that amount was expressly defined in the guaranty, i.e., the amount of the total outstanding indebtedness that exceeded $735,000. *Moore v. White Motor Credit Corp*, 708 S.W.2d 465, 472 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (guarantor's liability on debt measured by principal's liability unless more extensive or more limited liability expressly set forth in guaranty agreement).

Regarding Tyler's contention that the guaranty does not provide that only payments made by Diamond C would reduce the guaranteed portion of the indebtedness, he relies on the following provision of the guaranty: "[i]f the guaranteed portion of the indebtedness is partially satisfied by reason of the election of Lender to pursue any of the remedies mentioned in this paragraph,[3] Guarantor shall remain liable for the balance of the guaranteed portion of the indebtedness." Tyler urges that this provision indicates the parties' intent that all payments against the debt reduced the guaranteed indebtedness and that such reduction was not limited to the borrower's installment payments. We disagree.

This interpretation of this portion of the guaranty conflicts with the language from subsection (c) quoted above whereby Tyler agreed to pay the guaranteed portion if Diamond C did not pay the note according to its terms. We construe this language to evidence an intent that only payments by Diamond C would reduce the guaranteed indebtedness, because, as discussed above, under this language, Tyler's liability became fixed when Diamond C defaulted under the terms of the note. Further, we must construe a contractual provision, if possible, so that it is in harmony, and not in conflict, with other provisions. *Coker*, 650 S.W.2d at 393. This provision can be given definite and certain meaning in harmony with all other provisions of the guaranty. In line with the parties' demonstrated intent to make the lender whole, and in line with other provisions discussed above, including the provision that Tyler's obligation to pay arose only upon demand, this language establishes that, if the Lender chose to proceed against other security before making demand on the guarantor, the guarantor was assured of credit on the guaranteed portion of the debt to the extent the proceeds from any other remedies exceeded $735,000. The very fact that the lender required the guaranty as additional security for the principal in excess of $735,-000 indicates that the parties realized that the value of the collateral under the deed of trust was only sufficient to secure a $735,000 loan at the time of the loan transaction in 1975. However, this was a thirty-year loan and this provision simply protected the guarantor in case the value of the collateral increased prior to any default on the note occurring.

Our construction is also in harmony with the provision that, "Except as specifically limited herein, this Guaranty unconditional-

---

**3.** Remedies listed include, in relevant part, "assertion of any lien right or realization upon any other security interest available to Lender."

ly guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer or agent of Borrower." This guarantee of Diamond C's performance, together with the provision that "[t]his is a guarantee of payment and performance and not of collection," evidences a clear intent that only the borrower's payments would reduce the guaranteed portion of the indebtedness.

Based on this construction, we disagree with Tyler that Preston Ridge had no right to apply the foreclosure proceeds to the unguaranteed portion of the indebtedness first. To the contrary, we conclude that Preston Ridge properly applied the proceeds to the unguaranteed portion, *i.e.* to the $735,000, which the deed of trust lien was primarily designed to secure at the time the loan was made. Other provisions of the guaranty support this result. The guaranty further provides that Tyler did not have a right of subrogation until Diamond C paid all sums due under the note and performed all obligations under the deed of trust. This provision is further evidence that the parties intended to make Preston Ridge whole in case of default by Diamond C. The guaranty also provides that Tyler waived any defense based upon Preston Ridge's election of remedies, including non-judicial foreclosure, and any right to require that resort be had to any security. This provision is also evidence of the parties' intent that Tyler's liability was to continue regardless of action taken by Preston Ridge against the collateral.

Finally, Tyler argues that any uncertainties in the guaranty must be resolved in favor of the guarantor. *Coker v. Coker*, 650 S.W.2d at 394. We agree that if the guaranty is *ambiguous*, rendering it susceptible to two reasonable interpretations, the one favorable to the guarantor, the other unfavorable, the interpretation will be given which favors the guarantor. *Southwest Sav. Assn. v. Dunagan*, 392 S.W.2d at 767. However, this Court agrees with the parties that this guaranty is *unambiguous;* consequently, this rule is inapplicable in this case.

Tyler also reminds us that under Texas law, "the guarantor is the so-called 'favorite of the law' in whose favor a guaranty agreement will be strictly construed." We agree that the rule of strictissimi juris applies *after* the terms of the guaranty agreement have been ascertained. *McKnight v. Virginia Mirror Co.*, 463 S.W.2d 428, 430 (Tex.1971). This rule prohibits the extension of the guarantor's obligations by implication beyond the written terms of the agreement, *Clark v. Walker–Keith Lumber Co.*, 689 S.W.2d 275, 278 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.), but it does not abrogate the principle applicable to all contracts that, in their interpretation, we are to seek for the true intent of the parties who executed them. 4 S. Williston, A Treatise on the Law of Contracts § 625 (3d ed. 1961). After applying settled rules of contract construction, we conclude that the parties' intent is clear that foreclosure proceeds should not apply first to the guaranteed portion of the indebtedness. Thus, we have not impliedly extended Tyler's obligations beyond the written terms of the contract.

Although we have found no Texas case involving analogous facts, Preston Ridge has cited cases from other jurisdictions which support our holding here. We find particularly persuasive the Wisconsin Supreme Court's decision in *Crown Life Ins. Co. v. La Bonte*, 111 Wis.2d 26, 330 N.W.2d 201 (1983), because the guaranty there was very similar to the one at issue in our case and because La Bonte's arguments were almost identical to those of Tyler in this case.

The guaranty in *Crown Life* unconditionally guaranteed payment of the first $45,000 of a $180,000 loan. Paragraph 3 of the guaranty contained language in which the guarantor promised "due and punctual payment" in order to discharge the guarantor's liability and provided that the guarantor would remain liable until the first $45,000 was paid; paragraph 5 stated that nothing in the guaranty "shall prevent the Mortgagee from suing on the note or foreclosing the Mortgage"; and paragraph 9 conditioned the guarantor's liability on the

unpaid principal balance being in excess of $135,000. The provisions in paragraphs 5 and 9 are almost identical to the provisions of the guaranty in this case.

The court held that, based on the language of the guaranty:

> the application of the proceeds from the forced sale of the collateral to the mortgage debt did not reduce the principal balance below $135,000 pursuant to the terms of the guaranty. Rather the guaranty required *due and punctual* payment by the debtor of the first $45,000 and thus required voluntary payments under the contract in order to discharge the guarantor's liability. Once default occurred before the first $45,000 of the debt was voluntarily paid, the guarantor became a debtor and liability attached. The sale of the collateral and the application of proceeds did not extinguish this liability because the entire debt was not satisfied. Any other construction renders the guaranty meaningless and would be contrary to its very purpose.

The Wisconsin court used the same rules of construction that Texas courts apply in arriving at its decision. As set out above, the court held that liability of the guarantor occurred upon default and that payment out of proceeds of the collateral was not a payment according to the terms of the note and, hence, not performance by the debtor.[4] The court further held application of the foreclosure proceeds did not satisfy the guarantor's promise to pay the first $45,-000 "when due."

The *Crown Life* guaranty also had a provision similar to the one in our case which gave the lender the right to proceed first against either the guarantor or the debtor. The Wisconsin court observed that this language provided that if the lender chose to foreclose first, such action would not affect its rights under the guaranty.

The court stated that "La Bonte's argument that Crown had to proceed first under the guaranty in order to preserve its right thereunder would read this entire paragraph out of the contract."[5]

Tyler attempts to distinguish this case because his guaranty does not contain any language regarding the "first" portion of the indebtedness. However, we conclude his guarantee of punctual payment of "that amount of principal indebtedness by which the sum of the outstanding principal balance ... exceeds $735,000" is the equivalent of his guarantee of the "first" portion of the indebtedness, that is of the payments which will reduce the outstanding principal balance on the note to $735,000. Thus, we conclude that this difference in language is not a distinguishing feature.

Our construction of the guaranty recognizes its basic purpose—to provide additional security for Diamond C's debt. If the proceeds from the sale of the collateral were construed to reduce the principal below $735,000 under the terms of the guaranty, the entire contract would be rendered meaningless. *See Crown Life Ins. Co.*, 330 N.W.2d at 206. "Such a construction [of the guaranty] would achieve the anomalous result that the collateral would benefit the guarantor [Tyler] and not the mortgagee [Preston Ridge]." *Id.* This Court will not construe a contract in such a way that it is rendered meaningless when a more reasonable construction fully comports with the intent of the parties as evidenced by the language of the contracts. *Coker*, 650 S.W.2d at 393. Furthermore, as noted above, this construction is in accord with decisions of courts in other jurisdictions that have decided this question.

We hold that the parties did not intend that application of the proceeds from the foreclosure sale should be applied first to reduce the guaranteed portion of the in-

---

4. *Accord: Alpha Fin. Assocs. v. Dann,* 18 Misc.2d 73, 186 N.Y.S.2d 554, 557–58, *aff'd,* 186 N.Y.S.2d 956, 8 A.D.2d 869 (1959) (application of foreclosure proceeds was payment out of the property itself and a substitute for the collateral represented by the deed of trust; application of foreclosure proceeds not a payment on the note "according to its terms").

5. Here, Tyler makes this same argument and concedes that, if Preston Ridge had proceeded first against him, he would have been liable for the $368,555.99 which Preston Ridge has sued for.

debtedness under the terms of the guaranty. Any other construction would be contrary to its very purpose. Tyler should not be relieved of his obligation under the terms of the guaranty by virtue of a forced sale of the collateral that provided security separate from and in addition to his guaranty. *See Crown Life Ins. Co.,* 330 N.W.2d at 207. Thus, we conclude that the trial court erred in granting Tyler's motion for summary judgment and in denying Preston Ridge's motion for summary judgment.

In its motion for summary judgment, Preston Ridge pled for attorney's fees pursuant to section 38.001 of the Texas Practice and Civil Remedies Code. Preston Ridge also prays on appeal for attorney's fees. Preston Ridge attached to its motion for summary judgment Exhibit J, an affidavit in which Preston Ridge's attorney in this cause states that her firm had, to that point, spent sixty-two hours working on this matter, including discussing, reviewing, and researching the case, filing a petition, and preparing Preston Ridge's motion for summary judgment, for a total of $5,500 in fees; that $6,000 would be a reasonable fee for services if Preston Ridge's motion for summary judgment were granted; that $7,500 would be a reasonable attorney's fee if Preston Ridge's motion for summary judgment were granted and Tyler made an unsuccessful appeal to this Court; and that, if the case were appealed to the Supreme Court of Texas, $4,000 would be a reasonable attorney's fee. Tyler did not controvert Preston Ridge's attorney's fees in his response or by affidavit.

Reasonable attorney's fees are recoverable on a claim on a written contract. TEX. CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986). A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies. TEX.R.CIV.P. 166a(c). Because we conclude that the trial court erred in overruling Preston Ridge's motion for summary judgment, we award reasonable attorney's fees to Preston Ridge that the trial court should have ordered [6] as follows: $6,000 for services in obtaining summary judgment; $7,500 if Tyler makes an unsuccessful appeal to this Court; and $4,000 should this case be appealed to the Supreme Court of Texas. We sustain Preston Ridge's first, second, and third points.

We reverse the judgment of the trial court and render judgment in favor of Preston Ridge.

---

**6.** This Court may reverse the judgment of the trial court and render such judgment as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings. TEX.R.APP.P. 81(c).