TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-00-00712-CV






Julian Pham a/k/a Nhon Quang Pham, Appellant



v.



Luis Mongiello, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 249,510, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING







 Appellant Julian Pham appeals from the trial court's order granting appellee Luis
Mongiello's motion for summary judgment and awarding Mongiello $12,341.83 in damages and
$1,000 in attorney's fees. We will affirm in part and reverse and remand in part.

 On September 27, 1997, to help his friend Deborah Leffingwell lease an apartment,
Pham signed an agreement stating he would guarantee payment to her landlord of all obligations or
indebtedness incurred under the lease by Leffingwell. Mongiello eventually evicted Leffingwell for
non-payment of rent and for having two dogs in the apartment. When Leffingwell did not pay the
past-due rent, late charges, and charges for unauthorized pets and repairs, Mongiello sued her. In
November 1999, he obtained a default judgment against Leffingwell awarding him $13,451.83: 
$9,616.09 in damages, $629.05 in interest, and $3,205.69 in attorney's fees. Mongiello then
demanded that Pham, the guarantor, pay the judgment. When Pham refused, Mongiello filed this
suit.

 Pham and Mongiello both filed motions for summary judgment. The trial court
granted Mongiello's motion, awarding him $12,341.83 in damages ($13,451.83 minus a $1,110
credit for a lease deposit) and an additional $1,000 in attorney's fees.

 Pham argues that the evidence is legally and factually insufficient to support the
damages awarded. Specifically, he argues (1) the trial court erred in construing the guaranty to
include tort damages and (2) the court should have granted his motion for summary judgment.

 Summary judgment is properly granted only when the movant establishes there are
no genuine issues of material fact to be decided and he is entitled to judgment as a matter of law. 
See Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Memorial
Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex. App.--Austin 1998, pet. denied). A defendant
seeking summary judgment must negate as a matter of law at least one element of each of the
plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative
defense. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant
establishes his right to summary judgment, the plaintiff must then present evidence raising a fact
issue. See id.

 In reviewing the grant of summary judgment, we view the evidence in the light most
favorable to the non-movant and make every reasonable inference and resolve all doubts in favor of
the non-movant. See id.; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985);
Howard, 975 S.W.2d at 693. When both parties move for summary judgment, we will determine
all questions presented and render the judgment the trial court should have rendered. Commissioners
Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 

 To support his motion for summary judgment, Mongiello produced: (1) Pham's
discovery responses in which he admitted his liability "only as to rents, late fees and reasonable
attorney fees," and admitted he had not paid Mongiello's demand, which Pham characterized as
"unreasonable"; (2) Mongiello's original petition filed in his suit against Leffingwell, in which he
alleged Leffingwell had "caused extensive property damage" to the apartment and owed rent, late
fees, and other charges under the lease; (3) an exhibit to that petition showing Leffingwell owed
$587.50 in rent, $595 in late fees, $226 in attorney's fees, and $8,208.59 for unauthorized pet
charges and damage and repairs to the apartment; (4) the default judgment stating that Leffingwell
had by her default "admitted the allegations of [Mongiello's] petition" and owed him $13,451.83;
(5) Mongiello's affidavit stating Pham had guaranteed the lease, Mongiello obtained a judgment
against Leffingwell for $13,451.83, Mongiello demanded payment of the judgment from Pham, and
Pham refused to pay; and (6) the lease guaranty. 

 The record provides almost no evidence regarding Mongiello's damages. The only
evidence as to specific damage done to the apartment by Leffingwell is a list attached as an exhibit
to Mongiello's petition against Leffingwell. The list itemizes the following damages:


Date Description Amount


April 4, 1997 Late fees $ 25.00 

April 30, 1997 Late fees $ 260.00

May 30, 1997 Rent $ 50.00

May 31, 1997 Late fees $ 310.00

June 15, 1997 ½ Month rent $ 387.50

June 15, 1997 Rent $ 150.00

June 15, 1997 Pets $5,760.00

July 1997 Rug $1,874.49

 Venetian Blinds $ 134.23

 Disposal sink $ 45.92

 Plumber $ 109.65

 Locks $ 70.85

 Locks $ 49.79

 Lawyer $ 60.00

 Lawyer (Eviction citation) $ 166.00

August 1997 Tile $ 63.66

 Tile Installation $ 100.00

Total $9,617.09

The only other evidence as to Leffingwell's conduct concerning the apartment is the eviction notice
stating she was being evicted for breaching the lease by "non-payment of all rent due . . . and
allowing two dogs without written pet agreement." Based on this evidence, Mongiello was awarded
a default judgment against Leffingwell for $9,616.09, plus interest of $629.05 and attorney's fees
of $3,205.69, one-third of the damages awarded. 

 In his response and motion for summary judgment, Pham argued that the guaranty
should be strictly construed against Mongiello and should not be read to imply obligations "not
specifically set forth or contemplated by the parties." Pham attached as evidence the notice of
eviction, an affidavit stating Mongiello had not credited against the damages he sought an $1,110
deposit paid by Pham, and Pham's affidavit, in which he stated he was not provided with a copy of
the lease when he signed the guaranty and did not undertake any negotiations or discussions of the
intent or scope of the guaranty. Pham stated 


I read it [the guaranty] to understand that I was only guaranteeing the rents, and any
reasonable late charges and reasonable attorneys [sic] fees. I did not read it to imply
any other charges. No one, especially me, ever contemplated or intended that I would
guarantee that Ms. Leffingwell would not be negligent or that I would guarantee or
indemnify them against any wrongful or intentional tortuous [sic] conduct by her. 
I did not receive any consideration from Plaintiff for that type of guarantee or for
being Ms. Leffingwell's insurer. If there was any pet damage, no one informed me
that I was guaranteeing against pet damage or taking on that additional liability.



Pham stated that he was prepared to pay the rent, late fees, and reasonable attorney's fees and in fact
had tendered that amount to the trial court's clerk.

 The lease guaranty states Pham will:



guarantee Tenant's [Leffingwell] performance of obligations under the above
referenced lease (the Lease). If Tenant fails to timely make any payment (rent, late
fees, charges, attorney fees, or others) under the Lease, Guarantors [Pham] will
promptly make such payment to Landlord [Mongiello] at the place of payment
specified in the Lease. Guarantor's guarantee Tenant's obligations under the Lease
without regard to any modification, amendment, renewal, or extension. Guarantors
waive any rights to notices of acceptance, modification, amendment, renewal,
extension, or breach of the Lease. Tenant and Guarantors are jointly and severally
liable for all provisions of the Lease. All remedies in the event of breach (including
the reporting of default to consumer reporting agencies, acceleration of rents, and
other remedies) are enforceable against Tenant and Guarantor.

The guaranty stated Mongiello would provide Pham with a copy of the lease upon request. The
guaranty closed with language advising Pham to read the document carefully as it was legally
binding, and to seek an attorney's advice if he did not understand the effect of the guaranty.

 If a guaranty is ambiguous and susceptible to two reasonable interpretations, courts
should use the interpretation that favors the guarantor. Cox v. Lerman, 949 S.W.2d 527, 530 (Tex.
App.--Houston [14th Dist.] 1997, no writ); Preston Ridge Fin. Servs. Corp. v. Tyler, 796 S.W.2d
772, 780 (Tex. App.--Dallas 1990, writ denied). A guarantor's obligations will not be extended by
implication beyond the precise written terms of the guaranty contract. Cox, 949 S.W.2d at 530;
Tyler, 796 S.W.2d at 780. However, the fact that the parties to a contract disagree over the
interpretation of the contract does not necessarily render it ambiguous. Tyler, 796 S.W.2d at 777. 
Likewise, uncertainty or a lack of clarity in the language used in the contract does not automatically
render it ambiguous. Id. When a contract is unambiguous, its construction is a question of law to
be decided by the trial court and the court should not consider parol evidence of the contract's
meaning, such as a party's testimony of his intent. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983); Tyler, 796 S.W.2d at 777; Park Creek Assocs., Ltd. v. Walker, 754 S.W.2d 426, 428-29 (Tex.
App.--Dallas 1988, writ denied).

 A guarantor's liability on a debt is measured by the principal's liability unless the
guaranty expressly sets out a more limited or more extensive liability. Moore v. White Motor Credit
Corp., 708 S.W.2d 465, 472 (Tex. App.--Dallas 1985, writ ref'd n.r.e.). A dispute as to the rights
and obligations of the guarantor is resolved by a factual determination of the rights and obligations
of the parties to the underlying contract, in this case the lease between Mongiello and Leffingwell. 
Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 114 (Tex. 1978). 

 Pham was not provided with a copy of the lease when he signed the guaranty. 
Although Pham could have requested a copy of the lease, at the time he signed the guaranty, he was
not informed by Mongiello or Mongiello's agents of the various responsibilities Leffingwell had
agreed to under the lease. 

 Mongiello has not cited nor have we found case law construing and applying guaranty
agreements in the context of a residential lease. This is not a guaranty between two entities
sophisticated in business. This is an individual doing a favor for a friend and guaranteeing rent
payments to her landlord. The language of the guaranty leads to the conclusion that it was intended
to guarantee that Mongiello would receive all rent due, not other damages. The guaranty states Pham
would be liable for "any payment" and for Leffingwell's "performance of obligations " under the
lease. However, the guaranty then immediately references rent and late fees, with only a blanket,
cursory reference to other possible charges--"(rent, late fees, charges, attorney fees, or others)." 
(Emphasis added.) This language indicates the guaranty was intended to ensure rent payments and
late fees tied to rent. It does not indicate that Pham guaranteed unlisted charges such as repairs or
unauthorized pet charges. 

 We believe this case is analogous to cases involving indemnity agreements. If a party
seeks through contract to obtain indemnification against its own negligence, that indemnity must be
expressly stated in the agreement. Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe
Ry. Co., 890 S.W.2d 455, 458 (Tex. 1994); Dorchester Gas Corp. v. American Petrofina, Inc., 710
S.W.2d 541, 543 (Tex. 1986). Those express terms must also be conspicuous in the contract. 
Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). Such express
language is also required in cases where a party seeks indemnification for strict liability because it
(1) "prevents the injustice that may occur when an innocent party incurs tremendous costs because
of another's strict statutory liability," and (2) "prevents drafters from 'devis[ing] novel ways of
writing provisions which fail to expressly state the true intent of those provisions' and concealing
that intent through the use of ambiguous language." Houston Lighting & Power Co., 890 S.W.2d
at 458 (quoting Ethyl Corp v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987)). In Ethyl
Corp., the party seeking indemnity relied on language in the indemnity agreement referring to "any
loss." Ethyl Corp., 752 S.W.2d at 708. The court disagreed and held that the agreement did not
expressly provide indemnity for loss due to negligence. Id. 

 These justifications apply with equal force here. A guaranty seeking to make a third
party liable for a lessee's obligations under a lease must expressly and clearly set out what possible
charges could be incurred under the lease. This guaranty did not set out in express and conspicuous
terms that Pham might be liable for pet charges or repairs to the apartment. (1) By his guaranty, Pham
ensured only that Leffingwell was creditworthy for rent and late fees. He did not guarantee that she
would at all times behave properly during the term of the lease. By this simple instrument, Pham
did not become an insurer of Leffingwell's conduct. An individual guarantor should not be expected
to anticipate that a friend might be negligent. A friend's negligent or even tortious conduct generally
is not foreseeable, and damages due to such conduct are not foreseeable under this guaranty. (2) We
hold Pham guaranteed rent, late fees, and reasonable attorney's fees related to those rents and fees. 
Pham is therefore liable under the evidence in the record for $595.00 in late fees, $587.50 in rent,
along with reasonable attorney's fees. We remand this cause to the trial court for a hearing to
determine what attorney's fees are reasonable in light of our ruling today.



 __________________________________________

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: October 11, 2001

Publish

1. Indeed the lease agreement provided that pets were not permitted without prior permission.
2. Further, although Pham has not raised this argument on appeal, we note that Texas case law
disapproves of holding a guarantor liable based on a default judgment entered against the principal
when the guarantor had no notice or opportunity to defend against the default judgment. See Howze
v. Surety Corp. of Am., 584 S.W.2d 263, 265 (Tex. 1979); Brazos Valley Cmty. Action Agency v.
Robison, 900 S.W.2d 843, 845 (Tex. App.--Corpus Christi 1995, writ denied); Mayfield v. Hicks,
575 S.W.2d 571, 574 (Tex. App.--Dallas 1978, writ ref'd n.r.e.) (guarantor not liable on default
judgment in which he participated); see also Trinity Universal Ins. Co. v. Briarcrest Country Club
Corp., 831 S.W.2d 453, 455 (Tex. App.--Houston [14th Dist.] 1992, writ denied) (applying same
rule to case involving surety on performance bond).