COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | |
| IN RE: LORENZO AGUILAR, | § | No. 08-10-00265-CV |
| | § | |
| | | AN ORIGINAL PROCEEDING |
| Relator. | § | |
| | | IN MANDAMUS |
| | § | |
| | § | |

## OPINION ON PETITION FOR WRIT OF MANDAMUS

In this original proceeding of first impression, we must determine whether a writ of mandamus should issue because the trial court denied a motion to compel advancement of litigation expenses. We will conditionally grant the writ.

## FACTUAL SUMMARY

In 1992, Lorenzo Aguilar and Eugenio Mesta formed Perspectiva Group, Inc., a company that furnishes architectural, construction, and construction management services.[1] Aguilar was an officer and director of Perspectiva. In 2006, Perspectiva allegedly entered into a joint venture agreement with Native Contractors, Inc., whereby the two companies were to split the profits and losses from a contract to refurbish the Bay Pines National Cemetery. Native later sued Perspectiva, Aguilar, and Mesta, claiming that the defendants had breached the joint venture agreement and their fiduciary duties.

Perspectiva settled with Native and received an assignment of Native's claims. It then filed

---

[1] The company was originally called Aguilar & Mesta, Inc., but subsequently changed its name to Perspectiva.

cross-claims against Aguilar and certain Perspectiva employees, including Aguilar's son, for conspiracy and breach of fiduciary duties. Perspectiva alleges that the other employees, with Aguilar's knowledge, formed a company for the purpose of moonlighting on the cemetery project. These same employees "double-dipped" on the project by having their company bill for some of the services that they were performing as employees as Perspectiva. The employees allegedly shared part of their company's revenue from the project with Aguilar.

Perspectiva also filed a separate suit against Aguilar and others. In this suit, Perspectiva accused Aguilar's daughter, who was an employee of Perspectiva, of forming a company that competed with Perspectiva. Aguilar allegedly knew that his daughter's company received subcontracts from Perspectiva and that those subcontracts involved conflicts of interest and moonlighting. The two suits were eventually consolidated into one cause.

Citing Section 12.4 of Perspectiva's bylaws, Aguilar's attorney sent Perspectiva's attorney a letter requesting that Perspectiva advance Aguilar's defense costs, including attorney's fees. Article 12 of Perspectiva's bylaws deals with indemnification of officers and directors who are parties to a legal proceeding. Section 12.1 requires Perspectiva to indemnify these persons against judgments and reasonable expenses under certain circumstances. Section 12.2 sets forth the standard of conduct that must be met to be entitled to indemnification. At a minimum, the person must have acted in good faith and under the reasonable belief that his or her actions were not opposed to Perspectiva's best interests. Section 12.4, which concerns advancement of expenses, reads in its entirety:

> SECTION 12.4    Payment of Expenses.    Reasonable expenses incurred by a person who was, is, or threatened to be made a named defendant or respondent in a Proceeding shall be paid or reimbursed by the Corporation, in advance of the final disposition of the Proceeding, and without determination of indemnification, after the Corporation receives a written affirmation by the director

or officer of his good faith belief that he has met the standard of conduct necessary for indemnification under this Article in a written undertaking by or on behalf of the person to repay the amount paid or reimbursed if it is ultimately determined that he has not met that standard or if it is ultimately determined that indemnification of the director against expenses incurred by him in connection with that proceeding is prohibited by law or Section 12.1 hereof. The written undertaking described above must be an unlimited general obligation of the person but need not be secured. The written undertaking may be accepted without reference to financial ability to make repayment.

Counsel's letter states that "Aguilar does not believe he has committed any breach of his fiduciary duty, is in titled [sic] to in indemnification [sic] per Section 12.1 of the bylaws, and in the event of a determination to the contrary, will undertake to repay those sums advanced to him as an unlimited general obligation." When Perspectiva failed to respond to the letter, Aguilar filed a counterclaim against Perspectiva for indemnification and advancement of defense costs. He also filed a "motion to compel" Perspectiva to reimburse him for attorney's fees already incurred and to advance his future attorney's fees on a monthly basis.[2]

Thereafter, Perspectiva's board of directors voted not to advance Aguilar's defense costs. Perspectiva also filed a response to Aguilar's motion to compel advancement, objecting to the motion on procedural and substantive grounds.

During a hearing on Aguilar's motion, the trial judge concluded that Aguilar's entitlement to advancement turned on whether he had met the standard necessary for indemnification under Perspectiva's bylaws and whether he would have the ability to repay the advanced funds. After Aguilar refused to present any evidence on these issues, the judge denied the motion to compel.

**STANDARD OF REVIEW**

---

[2] The full title of Aguilar's motion was "Lorenzo Aguilar's Motion to Compel Perspectiva Group, Inc. D/B/A Perspectiva to Comply With Its Bylaw Provisions and to Abate This Case Pending Compliance." Aguilar later filed a substantively identical plea for relief, but with the new name "Lorenzo Aguilar's Application to Compel Perspectiva Group, Inc. D/B/A Perspectiva to Comply With Its Bylaw Provisions and to Abate This Case Pending Compliance."

A writ of mandamus will issue only if the trial court clearly abused its discretion and if the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135-36 (Tex. 2004)(orig. proceeding). A court's erroneous legal conclusion, even on a matter of first impression, is an abuse of discretion. *Huie v. DeShazo*, 922 S.W.2d 920, 927-28 (Tex. 1996)(orig. proceeding). Appeal following a trial is inadequate if the very act of proceeding to trial would defeat the substantive right at stake. *In re McAllen Medical Center, Inc.*, 275 S.W.3d 458, 465 (Tex. 2008)(orig. proceeding).

## ADVANCEMENT OF LITIGATION EXPENSES

Article 2.02-1 of the Texas Business Corporation Act expressly allows Texas corporations to advance litigation expenses to its directors.[3] The statutory language regarding advancement is nearly identical to Section 12.4 of Perspectiva's bylaws:

> K.      Reasonable expenses incurred by a director who was, is, or is threatened to be made a named defendant or respondent in a proceeding may be paid or reimbursed by the corporation, in advance of the final disposition of the proceeding and without the determination specified in Section F of this article [regarding how a determination of indemnification must be made] or the authorization or determination specified in Section G of this article [regarding authorization of indemnification], after the corporation receives a written affirmation by the director of his good faith belief that he has met the standard of conduct necessary for indemnification under this article and a written undertaking by or on behalf of the director to repay the amount paid or reimbursed if it is ultimately determined that he has not met that standard or if it is ultimately determined that indemnification of the director against expenses incurred by him in connection with

---

[3] On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Texas Business Organizations Code. *Anderson Petro-Equipment, Inc. v. State of Texas*, 317 S.W.3d 812, 815 n.2 (Tex.App.--Austin 2010, pet. denied). The Business Corporation Act generally governs the acts, contracts, and transactions of a corporation and its officials that occurred before January 1, 2010. *See* TEX.BUS.ORGS.CODE ANN. §§ 401.001-402.006. 402.006 (West Pamphlet 2010). But, pursuant to Section 402.007 of the Business Organizations Code, the Code governs any proposed indemnification by a corporation after January 1, 2010, regardless of when the relevant events occurred. *See id.* § 402.007. Although advancement and indemnification are closely related concepts and are covered in the same chapter of the Code, Section 402.007 omits any reference to advancement. *See id.* §§ 8.001-.104 (addressing indemnification and advancement). Therefore, and because all of the events giving rise to this proceeding occurred before 2010, we will cite the Business Corporation Act here. As they relate to the issues in this proceeding, however, there is no substantive difference between the old Act and the new Code.

that proceeding is prohibited by . . . this article. . . .

L.    The written undertaking required by Section K of this article must be an unlimited general obligation of the director but need not be secured. It may be accepted without reference to financial ability to make repayment.

TEX.BUS.CORP.ACT ANN. art. 2.02-1(K), (L)(West 2003).[4]

There are no Texas cases concerning advancement under the Business Corporation Act or the Business Organizations Code. But the courts of Delaware have addressed advancement on numerous occasions. The Delaware Supreme Court has explained that indemnification encourages corporate service by protecting an official's personal financial resources from depletion by the expenses incurred during litigation that results from the official's service. *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del.Supr. 2005). "Advancement is an especially important corollary to indemnification" because it provides corporate officials with immediate interim relief from the burden of paying for a defense. *Id.* "Although the right to indemnification and advancement are correlative, they are separate and distinct legal actions." *Id.* at 212. The right to advancement is not dependent on the right to indemnification. *Id.* "A now long line of recent cases enforces mandatory advancement provisions. These cases all stand for the proposition that a . . . bylaw . . . provision mandating advancement in no way renders the right to advances dependent upon the right to indemnity." Stephen A. Radin, *"Sinners Who Find Religion": Advancement of Litigation Expenses to Corporate Officials Accused of Wrongdoing*, 25 REV.LITIG. 251, 268-69 (2006)(internal quotation marks omitted).

*Breach of Fiduciary Duty*

In denying Aguilar's request for advancement, Perspectiva's board stated that Aguilar has unclean hands because of his breaches of his fiduciary duties. Perspectiva presented evidence on this

---

[4]  These provisions are now codified as Section 8.104(a) and (c) of the Business Organizations Code.

issue at the hearing on the motion to compel, and Aguilar refused to submit any opposing evidence.

Under Delaware law, advancement is allowed even when the official seeking advancement is being sued by the corporation that must advance the litigation expenses. "Delaware case law is replete with insider trading cases in which executives' expenses are advanced despite allegations of defrauding the corporation or its stockholders of millions of dollars." *James River Mgmt. Co., Inc. v. Kehoe*, 674 F.Supp.2d 745, 750 (E.D.Va. 2009). Advancement claims are frequently granted when, as in this case, the corporation is suing an official for breach of fiduciary duty. *See id., citing* Delaware law. The corporation cannot defend against the advancement claim on the ground that it now believes the fiduciary to have been unfaithful because "it is in those very cases that the right to advancement attaches most strongly." *Id.* (internal quotation marks omitted); *see also Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del.Supr. 2005)(indicating that the movant's alleged conduct in the underlying litigation is irrelevant during an advancement hearing). As the Delaware Court of Chancery has pointed out:

> It is not uncommon for corporate directors, officers, and employees to be sued for breach of the fiduciary duty of loyalty, and to have to defend claims that they took official action for the primary purpose of diverting corporate resources to their own pocketbooks . . . . Therefore, it is highly problematic to make the advancement right of such officials dependent on the motivation ascribed to their conduct by the suing parties. To do so would be to largely vitiate the protections afforded by [statutory] and contractual advancement rights.

*Reddy v. Electronic Data Systems Corp.*, No. CIV.A. 19467, 2002 WL 1358761, at *5 (Del.Ch. June 18, 2002).

Delaware has been described as "the Mother Court of corporate law." *Kamen v. Kemper Financial Services, Inc.*, 908 F.2d 1338, 1343 (7th Cir. 1990), *rev'd on other grounds*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Courts throughout the country look to Delaware for guidance on matters of corporate law. *See* Radin, *supra*, at 251; *see also Neurobehaviorial*

*Associates, P.A. v. Cypress Creek Hospital, Inc.*, 995 S.W.2d 326, 332 n.12 (Tex.App.--Houston [1st Dist.] 1999, no pet.)(turning to Delaware corporate law for guidance regarding "winding-up" because there were no Texas cases addressing the issue). The law of advancement, in particular, is "a Delaware specialty." *Int'l Airport Ctrs., LLC v. Citrin*, 455 F.3d 749, 750 (7th Cir. 2006)(Posner, J.). "To the limited extent that there is law [regarding advancement] outside Delaware, it is the same as the law in Delaware." Radin, *supra*, at 271.

Despite Delaware's expertise in this area, Perspectiva urges us not to follow Delaware law. It claims that one Texas appellate court refused to follow Delaware on a related issue. *See University Savings Ass'n v. Burnap*, 786 S.W.2d 423 (Tex.App.--Houston [14th Dist.] 1990, no writ). In *Burnap*, the appellant cited a Delaware case and a New York case in support of its argument that the appellee was not entitled to indemnification. In response to this argument, the Fourteenth Court of Appeals simply stated, "The facts in each of these cases easily distinguish them from the instant case and are not authority for the issue before us." *Id.* at 426. *Burnap* does not indicate that Delaware corporate law decisions should be disregarded when they are on point.

Perspectiva suggests that Delaware law is inconsistent with Texas law. He relies in part on *Bayliss v. Cernock*, 773 S.W.2d 384 (Tex.App.--Houston [14th Dist.] 1989, writ denied). In *Bayliss*, the court held that an officer who breached his fiduciary duties was not entitled to be indemnified for his attorney's fees. 773 S.W.2d at 388. As noted above, indemnification and advancement are distinct legal concepts. *Bayliss* does not address advancement and thus does not stand for the proposition that the entitlement to advancement hinges on proof that the director did not violate his fiduciary duties.

Perspectiva also cites a 1979 decision in which the Sixth Court of Appeals held that corporate officers could not use corporate funds to advance defense costs to officers who were charged with

wrongdoing. *See Texas Society v. Fort Bend Chapter*, 590 S.W.2d 156, 158-59, 164 (Tex.Civ.App.--Texarkana 1979, writ ref'd n.r.e.). The court stated that corporate officers "are not entitled to indemnification *pendente lite* because there is no statutory provision authorizing the advancement of expenses in connection with litigation against [them]. It is only at the conclusion of the litigation and after which the officers . . . have been absolved from negligence or misconduct in performance of duty that the corporation is authorized to indemnify them." *Id.* at 164. This case was decided before Article 2.02-1 of the Business Corporation Act was enacted. The Bar Committee comment to Article 2.02-1 states that the statute was intended to "remedy a number of deficiencies and ambiguities in the old law" and that the statute specified the circumstances in which advancement would be allowed "thereby displacing the dictum to the contrary contained in *Texas Society v. Fort Bend Chapter*, 590 S.W.2d 156 (Tex.Civ.App.--Texarkana 1979, writ ref'd n.r.e.)." TEX.BUS. CORP.ACT ANN. art. 2.02-1, 1983 Bar Committee cmt. In other words, the Sixth Court's holding was superseded by Article 2.02-1(K). Perspectiva has not demonstrated that Delaware law regarding advancement is inconsistent with Texas law.

Even if we follow Delaware law, Perspectiva contends that unclean hands is a recognized defense to an advancement claim pursuant to the *Homestore* case. There, the corporation alleged that a corporate officer sheltered his assets before seeking advancement, thus making it difficult or impossible for the corporation to obtain reimbursement if the officer was eventually determined not to be entitled to indemnification. *Tafeen v. Homestore, Inc.*, No. CIVA. 023-N, 2004 WL 556733, at *6 (Del.Ch. March 22, 2004). The Delaware Court of Chancery held that this allegation made out an unclean hands defense. *Id.* 2004 WL 556733, at *6-*7. The court noted that the corporation's "unclean hands argument is unique in that it is based not in [the officer's] conduct related to the underlying claims, as previous unclean hands arguments have been based, but in his conduct in

making the advancement claim itself." 2004 WL 556733, at *6.

Although Perspectiva claims that Aguilar took actions for his own personal benefit at the expense of the corporation, it does not claim, as the corporation did in *Homestore*, that he deliberately sheltered his assets in anticipation of this litigation to prevent Perspectiva from obtaining reimbursement of any advanced funds. The evidence submitted by Perspectiva relates to Aguilar's conduct in the underlying suit between the two parties. The Delaware Court of Chancery has specifically rejected Aguilar's unclean hands theory because it "would turn every advancement case into a trial on the merits of the underlying claims of official misconduct." *Reddy*, 2002 WL 1358761 at *9. Thus, whether referred to as "breach of fiduciary duty" or "unclean hands," Aguilar's conduct in the underlying suit is irrelevant. *See Kaung*, 884 A.2d at 509.

*Best Interests of the Corporation*

Perspectiva's board also cited the corporation's best interests as a basis for denying advancement. Perspectiva relies on the decision of a Pennsylvania federal district judge to establish that this was a valid basis. *See Fidelity Federal Savings and Loan Association v. Felicetti*, 830 F.Supp. 262 (E.D.Pa. 1993). In *Felicetti*, a corporation sued its former president and vice president for breach of fiduciary duties, fraud, and civil conspiracy. *Id.* at 263. The defendants requested advancement of their defense costs pursuant to a mandatory advancement provision in the corporation's bylaws. *Id.* at 264. The corporation declined the request after concluding that it would not be in the corporation's best interests. *Id.* The judge concluded that the mandatory advancement provision conflicted with the fiduciary duty to act only in the best interest of the corporation. *Id.* at 268-69. In resolving this conflict, the court determined that the directors' fiduciary duties to act in the corporation's best interests would control, rendering the mandatory advancement provision unenforceable. *Id.* at 269-70.

As with Pennsylvania corporations, directors of Texas corporations have a fiduciary relationship with the corporation. *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188, 198 (Tex.App.--Texarkana 2003, no pet.). And as in *Felicetti*, Perspectiva's directors determined that it would not be in the corporation's best interests to advance Aguilar's defense costs. Perspectiva therefore argues that the advancement bylaw must yield to the board's determination of the corporation's best interests.

The Third Circuit Court of Appeals has rejected *Felicetti* because "[r]arely, if ever, could it be a breach of fiduciary duty on the part of corporate directors to comply with the requirements of the corporation's by-laws, as expressly authorized by statute." *See Ritter v. CityFed Financial Corp.*, 47 F.3d 85, 87 (3rd Cir. 1995). A Pennsylvania intermediate appellate court also declined to follow *Felicetti*. *See Neal v. Neumann Medical Center*, 667 A.2d 479, 481-82 (Pa.Cmwlth 1995), *appeal denied*, 694 A.2d 624 (Pa. 1996). The court concluded that a mandatory advancement bylaw did not conflict with the fiduciary duties imposed by Pennsylvania law. "Rather, it would appear that [the corporation's] directors can only act in the corporation's best interests by implementing the mandatory advancement provision, since the bylaws which contain it were presumably adopted for [the corporation's] benefit." *Id.* at 482.

As a result of *Ritter* and *Neal*, *Felicetti* is not good law in its own district. Although that would not prevent us from following it if we found its reasoning persuasive, we find *Ritter* and *Neal* more convincing. Corporate directors should not be allowed to cite an *ad hoc* determination regarding corporate "best interests" to pick and choose which bylaws they will enforce. We therefore hold that advancement cannot be denied on the ground that Perspectiva now believes it is not in the corporation's best interests.

*Ability to Repay*

The next two issues focus on the language of the bylaws. In construing the bylaws, we apply the rules that govern the interpretation of contracts. *See Hill v. Boully*, No. 11-08-00289-CV, 2010 WL 2477868, at *1 (Tex.App.--Eastland June 17, 2010, no pet.)(mem. op.); *Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at *8 (Tex.App.--Austin Nov. 26, 2008, pet. denied)(mem. op.); *Burnap*, 786 S.W.2d at 425. We attempt to harmonize and give effect to every provision and we presume that the parties intended to impose reasonable terms. *Somers v. Aranda*, 322 S.W.3d 342, 345 (Tex.App.--El Paso 2010, no pet. h.); *Nevarez v. Ehrlich*, 296 S.W.3d 738, 742 (Tex.App.--El Paso 2009, no pet.). Accordingly, an interpretation that gives a reasonable meaning to all parts is preferred over one that leaves a portion useless, insignificant, or "achieves a weird and whimsical result." *Rowan Companies, Inc. v. Wilmington Trust Co.*, 305 S.W.3d 698, 708 (Tex.App.--Houston [14th Dist.] 2009, pet. filed)(internal quotation marks omitted). Indemnity provisions, in particular, should be given a "common sense reading." *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 561-62 (Tex.App.--Houston [14th Dist.] 2002, no pet.).

If a bylaw is written so that it can be given a definite interpretation, it is not ambiguous and the court will construe it as a matter of law. *See Nevarez*, 296 S.W.3d at 742. Not every difference in interpretation amounts to an ambiguity; mere disagreement over the meaning of a provision does not make the terms ambiguous. *Id.* Similarly, a lack of clarity in the language chosen by the parties is insufficient to render a provision ambiguous. *Id.* And a bylaw is not ambiguous if its meaning can be discerned by applying the rules of construction. *See Quick v. Plastic Solutions of Texas, Inc.*, 270 S.W.3d 173, 183 (Tex.App.--El Paso 2008, no pet.).

The first sentence of Section 12.4 of the bylaws states:

> Reasonable expenses incurred by a person who . . . is . . . a named defendant . . . *shall* be paid or reimbursed by the Corporation, in advance . . . after the Corporation receives a written affirmation by the director . . . of his good faith belief that he has

met the standard of conduct necessary for indemnification under this Article in a written undertaking by or on behalf of the person to repay the amount paid or reimbursed if it is ultimately determined that he has not met that standard . . . . [Emphasis added].

Focusing on the word "shall," Aguilar asserts that Perspectiva was required to advance his defense costs once he provided his written undertaking to repay the funds. However, the last sentence of Section 12.4 states, "The written undertaking *may* be accepted without reference to financial ability to make repayment." [Emphasis added]. Perspectiva contends that the word "may" in this sentence denotes a discretionary act, rather than a mandatory one. Therefore, Perspectiva argues, the board of directors had the discretion to refuse advancement if it determined that Aguilar would not be able to repay the advanced funds if he ultimately loses in the underlying litigation. Perspectiva's board made just such a determination when it denied the request for advancement.

Although the word "shall" is generally construed to be mandatory, it may be construed as directory. *In the matter of J.L.W.*, 919 S.W.2d 841, 842 (Tex.App.--El Paso 1996, no writ)(construing a statute). Similarly, the word "may" is generally construed as permissive, but can be interpreted as mandatory depending on the context in which it is used. *See Ramsay v. Texas Trading Co., Inc.*, 254 S.W.3d 620, 631 (Tex.App.--Texarkana 2008, pet. denied); *Buttles v. Navarro*, 766 S.W.2d 893, 894 (Tex.App.--San Antonio 1989, no writ)(construing a statute); *see also Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)(stating that a statute providing that a party "may recover" attorney's fees is mandatory).

Viewing Section 12.4 as a whole, we conclude that Aguilar's interpretation is correct. The structure of the first sentence (providing that the director "shall be paid . . . after the Corporation receives a . . . written undertaking") indicates that Perspectiva has a mandatory duty to advance defense costs after it *receives* the written undertaking. Although the last sentence provides that the

undertaking "may be accepted," it does not condition Perspectiva's duty to pay on whether Perspectiva *accepts* the undertaking.

Moreover, Aguilar's interpretation is logical, taking the purpose of advancement into consideration. The last sentence of Section 12.4 contains a verbatim quote from Article 2.02-1 of the Business Corporation Act. *See* TEX.BUS.CORP.ACT ANN. art. 2.02-1(L)("It may be accepted without reference to financial ability to make repayment."). The Bar Committee comment to this Article states that it was based on the 1980 revision to Section five of the Model Business Corporation Act and refers to the official commentary for that revision. TEX.BUS.CORP.ACT ANN. art. 2.02-1, 1983 Bar Committee cmt. This official commentary provides, "The revision makes it clear that the undertaking need not be secured and that financial ability to repay is not a prerequisite, on the ground that it is not fair to favor wealthy directors who may be in less need of financial assistance in mounting their defense over directors whose financial resources are modest." Committee on Corporate Laws, *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel*, 36 BUS. LAW. 99, 115 (1980).

*Entitlement to Attorney's Fees*

Perspectiva's board also concluded that the advancement provision does not cover attorney's fees. Section 12.4 requires the advancement of "reasonable expenses" without defining that term. Perspectiva contends that when Section 12.4 is read in conjunction with Section 12.1, it is clear that "reasonable expenses" does not include attorney's fees.

The first sentence of Section 12.1 requires Perspectiva to indemnify a corporate officer who is a defendant in a legal proceeding "against all judgments, penalties (including excise and similar taxes), fines, settlements and reasonable expenses actually incurred by the person, including attorney's fees actually and reasonably incurred by him in connection therewith." But the second

sentence provides that in certain circumstances, such as if the officer is found liable to the corporation, indemnification "is limited to reasonable expenses actually incurred . . . ." Perspectiva argues that this language treats "reasonable expenses" and "attorney's fees" as two separate and distinct categories of reimbursements, so that "reasonable expenses" does not include attorney's fees. Moreover, because Section 12.4 omits the phrase "including attorney's fees actually and reasonably incurred by him in connection therewith," Perspectiva contends that attorney's fees are not subject to advancement. A more natural reading of the language is that the first sentence of Section 12.1 defines the term "reasonable expenses" to include attorney's fees and that definition applies to future references to "reasonable expenses" in the second sentence of Section 12.1 and in Section 12.4.

Perspectiva's interpretation renders Section 12.4 insignificant and practically useless. *See Rowan Companies, Inc.*, 305 S.W.3d at 708 (holding that contracts should not be construed so as to leave a portion useless or insignificant or to achieve a weird and whimsical result). The purpose of advancement is to relieve corporate officials from the "burden of paying the significant on-going expenses" involved in litigation. *Homestore*, 888 A.2d at 211. As Aguilar aptly notes, "The burden of litigation comes from attorney's fees, not copying costs." Accordingly, we hold that Perspectiva was required to advance Aguilar's reasonable expenses, including attorney's fees, once he tendered his written undertaking to repay the advanced funds.

*Procedural Vehicle for Seeking Advancement*

Perspectiva urged the trial judge to deny Aguilar's "motion to compel" advancement because such a motion is not recognized by any Texas legal authority. The judge rejected this procedural objection and proceeded to the merits of Aguilar's motion.

Perspectiva cites one case in support of its argument that the motion to compel was not the correct procedural vehicle for seeking advancement. *See Bayoud v. Bayoud*, 797 S.W.2d 304

(Tex.App.--Dallas 1990, writ denied). In *Bayoud*, the appellants argued that the trial court erred in refusing to grant a "motion for indemnification." *Id.* at 317. In upholding the trial court's decision, the appellate court stated that the motion "was a wholly ineffective and inappropriate method for seeking the relief asked for." *Id.* The court stated that the proper vehicle for determining indemnity would have been a cross-claim or a separate suit. The court further held that the motion was premature because the right to indemnity would not arise until the judgment was rendered or paid. *Id. Bayoud* is distinguishable because Aguilar's motion sought to compel advancement, rather than indemnification, and because the trial court found no defect in the procedural vehicle chosen by Aguilar. And unlike in *Bayoud*, Aguilar did not present a stand-alone motion, but submitted his motion to compel after first filing a counterclaim for advancement.

Perspectiva also contends here, as it did in the trial court, that there were recognized procedural vehicles available to Aguilar, such as a motion for a temporary injunction or a motion for summary judgment. Perspectiva does not explain why a temporary injunction proceeding would have been a proper way for Aguilar to obtain advancement, nor does it address why Aguilar should have been required to meet the onerous requirements for a temporary injunction. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)(stating that a temporary injunction is an extraordinary remedy that is designed to preserve the status quo and that requires, among other things, proof of irreparable injury); *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 401 (Tex.App.--Houston [14th Dist.] 2000, no pet.)(holding that a temporary injunction that changes the status quo should be granted only in the case of extreme hardship).

However, a summary judgment motion would have been an appropriate procedural vehicle. Aguilar could have filed a motion for summary judgment on his counterclaim for advancement, attaching copies of the applicable bylaws and his written undertaking. He does not explain why he

chose not to file a motion for summary judgment, nor does he cite any case from any jurisdiction approving the use of a motion to compel for this purpose. Aguilar's choice of this procedural vehicle is strange, given that he emphasizes the need for advancement provisions to be enforced in a summary fashion. Summary judgment proceedings are, as the name suggests, "summary." Furthermore, many of the decisions cited by Aguilar were made at summary judgment. *See, e.g., Homestore*, 888 A.2d at 208; *Morgan v. Grace*, No. Civ.A. 20430, 2003 WL 22461916, at *1 (Del.Ch. Oct. 29, 2003)("Summary judgment is an effective vehicle for deciding the advancement of legal fees . . . ."); *see also* DEL.CODE ANN. tit. 8, § 145(k)("The Court of Chancery may summarily determine a corporation's obligation to advance expenses (including attorneys' fees))."

In the motion to compel advancement, Aguilar argued that he was entitled to an order requiring immediate advancement of litigation costs. He attached his own affidavit, along with copies of Perspectiva's bylaws, counsel's letter requesting advancement, and invoices for attorney's fees. Despite the name applied to it, this motion was in effect a summary judgment motion. *See* TEX.R.CIV.P. 166a(a), (c). Perspectiva acknowledges as much, stating in its brief that Aguilar "sought a 'matter of law' ruling based on documentary evidence and affidavits" and that the motion therefore "approximates a motion for summary judgment." Perspectiva does not argue that it was prejudiced in any way by the name of the motion.

The proper objective of procedural rules "is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of *substantive* law." [Emphasis added]. *See* Tex.R.Civ.P. 1. Accordingly, the nature of a motion is determined by its substance, not its caption. *In re Brookshire Grocery Company*, 250 S.W.3d 66, 72 (Tex. 2008)(orig. proceeding); *cf. State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980)(orig. proceeding)(looking to the substance of a "motion for summary judgment" to conclude that it was not in fact such a motion).

Although the trial judge could have required Aguilar to bring his request as a summary judgment motion, she chose instead to proceed to the merits of the motion. If we denied mandamus relief on the basis of Aguilar's procedural misstep, we presume that he would re-file his request for relief in the trial court as a summary judgment motion, the trial judge would reach the same result as before, and Aguilar would seek mandamus review of the denial of the summary judgment motion. Thus, it would serve no useful purpose--and would elevate form over substance--to deny mandamus relief on the ground that Aguilar gave the wrong name to his motion.

## EQUITABLE CONSIDERATIONS

Perspectiva argues that mandamus relief should be denied on equitable grounds because Aguilar hindered the proceedings in the trial court and mischaracterized those proceedings in his mandamus petition. "[M]andamus relief is largely controlled by equitable principles." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010)(orig. proceeding)(internal quotation marks omitted).

A hearing on Aguilar's motion to compel advancement was held on June 7, 2010. The trial court concluded that Aguilar's entitlement to advancement turned on whether he had met the standard necessary for indemnification under Perspectiva's bylaws and whether he would have the ability to repay the advanced funds. The court offered to continue the hearing so Aguilar could be present and offer testimony. Aguilar's counsel rejected the court's offer of a continuance because he believed that the issues identified by the court are not relevant to Aguilar's claim for advancement. The court stated that counsel was "putting the Court in a quandary because you want me to rule and I am asking -- I don't have enough. I don't have enough, so I guess I am not going to rule because I don't have enough evidence. So you can either bring more evidence or just abandon it, I guess." Aguilar's counsel thanked the court and they moved on to a discovery motion. At the end of the hearing, the judge repeated that she wanted to continue the hearing on the issue of

advancement and then concluded with the statement, "Okay. So we take it from there."

A few days after the hearing, Aguilar's counsel circulated an order denying the motion to compel advancement. Perspectiva's attorney responded by letter, stating his understanding that the court had not ruled on the motion and was awaiting evidence from Aguilar. On June 14, Aguilar filed a motion for entry of the order, and a hearing was set for August 10. At the hearing, the judge agreed to sign the order, but did not have a copy of it that was suitable for signing. Aguilar's counsel asked the court if he could circulate a copy of the order only to Perspectiva's attorney and not to other attorneys in the case who are not involved in this dispute. The court said that would be "[n]o problem." The next day, Aguilar's counsel submitted to the court an order that had been approved by Perspectiva's attorney. On August 25, Aguilar's counsel sent a letter to the court, inquiring about the status of the order.

On August 30, 2010, Aguilar filed a mandamus petition in this court, asserting that the trial court abused its discretion by denying the motion to compel advancement and by refusing to enter an order. At a hearing the next day, the judge stated that her court coordinator had advised Aguilar's attorney's staff that his order could not be signed because it had not been approved by every attorney who was at the previous hearing. All the attorneys approved the order during the August 31 hearing and the judge immediately signed it. On September 1, Aguilar filed an amended mandamus petition, omitting his complaint about the lack of a written order. However, the amended petition asserts that the judge's error in denying advancement "is compounded by [her] failure to enter an order memorializing her decision for almost three months."

Perspectiva contends that Aguilar hindered the trial court proceedings by refusing to present evidence on the issues identified by the trial judge and by failing to submit an appropriate order. He then mischaracterized the proceedings in his mandamus petition by blaming the trial judge for the

delay. For the reasons explained above, Aguilar's entitlement to indemnification and his ability to repay the advanced funds are irrelevant to his claim for advancement. Therefore, Aguilar did not hinder the trial court proceedings by refusing to submit evidence on these issues. Our review of the transcript, set forth above, reveals that the status of Aguilar's motion was uncertain at the conclusion of the June 7, 2010 hearing. Because of this uncertainty, Aguilar did not act inappropriately in attempting to get a definitive ruling by circulating an order denying the motion, just as Perspectiva did not act inappropriately in refusing to approve the order on the ground that the judge had not actually made a ruling. Aguilar did not delay in filing a motion for entry of the order, which was set for a hearing on August 10. Considering that there was a dispute between counsel, it was a bit of a stretch for Aguilar to blame the judge for the entire period between June 7 and August 10. However, the remaining delay was evidently due to miscommunication between the judge and her court coordinator. The judge stated at the August 10 hearing that she would sign an order that had only Perspectiva's approval, and Aguilar submitted such an order the next day. When the judge still did not sign the order, he made an inquiry on August 25, before seeking mandamus relief on this ground on August 30. At the hearing on August 31, the judge chastised Aguilar's counsel for failing to obtain the approval of all of the attorneys on the case, apparently forgetting she had told counsel that these approvals were unnecessary. While accusing Aguilar of mischaracterizing the record and of failing to submit an appropriate order, Perspectiva fails to acknowledge that the judge expressly granted Aguilar permission to submit an order without the approval of every attorney on the case.

In summary, both sides have unsurprisingly presented the procedural history in a way that most favors their positions. But neither side has acted in a manner that would justify us in making a decision to grant or deny relief on the ground that the record was mischaracterized.

**INADEQUACY OF APPELLATE REVIEW**

Perspectiva maintains that adequate appellate remedies exist. It points out that an immediate appeal would be available if Aguilar had sought a temporary injunction. *See* TEX.CIV.PRAC.&REM. CODE ANN. § 51.014(a)(4)(West 2008). Similarly, Aguilar would have a final judgment to appeal if he had pursued advancement in a separate lawsuit, rather than as a counterclaim. As explained above, there is no basis for requiring Aguilar to meet the requirements for a temporary injunction. Furthermore, it was proper for Aguilar to raise advancement as a counterclaim. *See* TEX.R.CIV.P. 97(a), (b). Although there may have been other ways for Aguilar to pursue his claim in the trial court, Perspectiva does not cite any authority for the proposition that the adequacy of appellate remedies should be based on a hypothetical procedural posture.

Perspectiva argues that even when the actual procedural posture is considered, appeal is an adequate remedy: If Aguilar prevails at trial, the trial court could then order that he be paid for his litigation expenses; if he loses at trial, he could raise the advancement issue on appeal. This argument is unconvincing. By its very nature, advancement of expenses can occur only during the course of the trial court proceedings. *See Morgan*, 2003 WL 22461916, at *1 ("The value of the right to advancement is that it is granted or denied while the underlying action is pending."). It is indemnification of expenses that occurs at the conclusion of the case. Thus, Aguilar's advancement claim will be effectively moot at the conclusion of the case. *See Reddy*, 2002 WL 1358761 at *9 (stating that trying a claim for advancement "simultaneous with the trial of the same lawsuits for which the corporate official is seeking provisional payment of his litigation expenses . . . results in an unacceptable cost: the effective elimination of the separate right of advancement"); *cf. In re McAllen Medical Center*, 275 S.W.3d at 465 ("The most frequent use . . . of mandamus relief involves cases in which the very act of proceeding to trial--regardless of the outcome--would defeat the substantive right involved.").

Discussing the adequacy of appellate review, the Texas Supreme Court has stated:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Prudential*, 148 S.W.3d at 136. In *Prudential*, the trial court refused to enforce a contractual waiver of the right to trial by jury. *Id.* at 127. The court held that mandamus relief was "not only appropriate but necessary." *Id.* at 138. It was an issue of first impression that eluded answer by appeal. *Id.* Furthermore, the denial of this contractual right could not be effectively remedied on appeal. If the relator obtained a favorable jury verdict, it could not appeal, and its contractual right would be lost forever. *Id.* If the trial resulted in an unfavorable verdict, the relator could not obtain reversal for the erroneous denial of its contractual right unless it could show that the error probably caused the rendition of an improper judgment. *Id.*, *citing* TEX.R.APP.P. 44.1(a)(1). If the relator could meet this standard, it still would have lost part of its contractual right by being subjected to the procedure it agreed to waive. *Id.*

What the Supreme Court said in *Prudential* is applicable here. We are presented with an issue of first impression for this State. If Aguilar obtains a favorable jury verdict, he cannot appeal, and his right to advancement will be lost forever. If the verdict is unfavorable to him, it would be difficult for Aguilar to establish how the denial of advancement prejudiced his case and thereby constitutes reversible error. Even if he met this standard, the full value of the right to advancement would already be lost. Accordingly, we conclude that Aguilar does not have an adequate remedy by appeal.

**CONCLUSION**

The petition for a writ of mandamus is conditionally granted. The writ will issue only if the trial court refuses to vacate its order denying Aguilar's motion to compel advancement and to enter an order granting the motion.

April 13, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment