**Writ Conditionally Granted and Opinion Filed April 12, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00460-CV

## IN RE MARK DEMATTIA, Relator

**Original Proceeding from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04107-2020**

## OPINION

Before Justices Schenck, Nowell, and Garcia
Opinion by Justice Nowell

In the underlying proceeding, real party in interest Restoration Specialists, LLC (Restoration) sued Mark DeMattia, RS Commercial Construction LLC, and RS, Inc. Restoration asserted various claims against relator related to his acts while he was a managing member of Restoration. Relator Mark DeMattia filed a motion for summary judgment seeking advancement of his legal expenses pursuant to Restoration's corporate regulations. After the trial court denied relator's request, he filed this petition for writ of mandamus alleging the trial court abused its discretion by denying advancement of his legal expenses. We initially denied this petition for writ of mandamus because relator improperly relied on a docket sheet entry and did not provide the Court with a written order or a record reflecting the trial court's

ruling. Relator then filed a motion for rehearing seeking to supplement the record with the written order and asking us to consider the petition on the merits. We requested and received a response from the real party in interest.

We conclude the advancement provision includes actions, like this one, against former members and that the trial court abused its discretion by denying relator's motion for summary judgment. We also conclude that relator does not have an adequate remedy by appeal. Accordingly, we conditionally grant the petition for writ of mandamus.

## Background

In 1967, a group of Dallas firefighters formed Restoration to provide emergency services to properties damaged by storms, floods, and fires. Relator and his younger brother, David DeMattia, bought Restoration in 2004 and reorganized the company as a limited liability company. Relator was the managing member and David was the minority member. Restoration later expanded its services to include commercial construction and job order services. Relator then spun off the job services division into a separate company, RSCC.

In 2018, WyoTexGa, LLC bought Restoration. According to Restoration, a few days before the closing, relator wrongfully copied or deleted Restoration's project history files. Restoration later sued relator claiming his wrongful acts while he was a managing partner harmed Restoration. In particular, Restoration alleged:

- "[B]efore the September 5, 2018 closing"—while still a managing

–2–

member of Restoration—[relator] wrongfully copied and/or deleted certain files and emails "belonging to Restoration";

- "*While still a member of Restoration (as well as an employee),* [relator] owed Restoration a formal fiduciary duty, including a duty of loyalty" and "a duty to refrain from self-dealing," and breached his duties by taking "Company Project History Files and emails (for his own use . . .)";

- "Given the self-interested nature of [relator's] actions," he must show he "did not **use the advantage of his position** to gain any benefit for himself at the expense of Restoration"; and

- "[Relator] acquired these trade secrets from Restoration *while still a member of Restoration* (as well as an employee)" and "had reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy."

Relator requested Restoration to indemnify, advance, and reimburse relator's expenses incurred in defending the lawsuit pursuant to Restoration's corporate regulations (the Regulations) and various provisions of the Texas Business Organizations Code. After Restoration refused to advance the requested costs, relator filed a counterclaim for breach of contract and advancement of his litigation expenses. Relator then filed a motion for summary judgment on those claims.

In his motion for summary judgment, relator claimed he was entitled to advancement of his legal fees under the broad and mandatory indemnification and advancement rights provision contained in Restoration's Regulations. Relator argued that section 8.002(b) of the Texas Business Organizations Code provides that an advancement provision adopted in an LLC's governing documents is enforceable. *See* TEX. BUS. ORGS. CODE § 8.002(b). He also argued Restoration's Regulations

required Restoration to advance expenses incurred by a current or former member in an action brought against him "by reason of the fact that he or she is or was" a member, and Restoration must "pay or reimburse" such expenses "in advance of the final disposition" of the proceeding and "to the fullest extent" permitted by the business organizations code. According to relator, because Restoration filed the underlying proceeding alleging he breached his fiduciary duties and stole its trade secrets based on his acts while he was a managing member of Restoration, its Regulations required advancement of his legal fees independent of his right to indemnification or allegations of wrongdoing.

Restoration responded to relator's motion contending relator was not entitled to advancement of the fees for several reasons. Specifically, Restoration alleged it need not advance fees to relator because: (1) the plain language of section 9.6 of the Regulations requires the claimant to be a member, in contrast to the indemnity provision which requires the claimant to be a member or former member; (2) relator's affidavit regarding fees was insufficient because it is not a fee affidavit by a legal expert; (3) the fees are not segregated to separate fees required to defend relator from those used to defend the other two defendants (RS Commercial Construction, LLC and RS, Inc.); (4) there are genuine issues of fact regarding the reasonableness of the fees; (5) the motion for summary judgment is legally insufficient; and (6) relator's claim is dependent upon his successful defense of the claims against him.

Relator replied that the Regulations unequivocally require advancement of the requested legal fees because read in context the advancement provision applies to both members and former members. Relator also argued that Restoration's arguments regarding the sufficiency of the motion and reasonableness of the fees were "red herrings" because relator was seeking summary judgment on his "entitlement to advancement" not on the reasonableness of the fees incurred to date.[1]

At the hearing, relator maintained he is entitled to advancement of fees as a former member pursuant to the Regulations as well as chapter 8 of the business organizations code. Restoration, on the other hand argued that chapter 8 of the code does not apply, but rather, the limited liability company provisions of the business organizations code applied, and those provisions, unlike the provisions in chapter 8, do not allow for advancement of fees to former governing members. Relator replied that the LLC act was adopted before the business organizations code, and the Regulations specifically reference the business organizations code, which does provide for advancement to former members.

## Mandamus Standard

Mandamus is an extraordinary remedy that is available only when the trial court has clearly abused its discretion and there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36, 137 (Tex. 2004) (orig. proceeding).

---

[1] At the hearing on the advancement claim, Restoration stated the reply made it clear that relator is "simply seeking an adjudication that they are entitled to advancement."

A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Therefore, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id.* at 840. In the context of a claim for advancement of legal fees, mandamus is the appropriate relief to correct an order denying advancement of a claimant's fees because the act of proceeding to trial without advancement would defeat the substantive right at stake. *In re Aguilar*, 344 S.W.3d 41, 45 (Tex. App—El Paso 2011, orig. proceeding).

## Discussion

There is limited Texas case law concerning advancement under the Texas Business Corporation Act or the Texas Business Organizations Code. But the courts of Delaware have addressed advancement on numerous occasions, and courts throughout the United States, including Texas, look to Delaware on matters of corporate law. *See L Series, LLC v. Holt*, 571 S.W.3d 864, 871 (Tex. App—Fort Worth 2019, pet. denied); *Aguilar*, 344 S.W.3d at 46–47. Indemnification encourages corporate service by protecting an official's personal financial resources from depletion by the expenses incurred during litigation that results from the official's service. *Aguilar*, 344 S.W.3d at 46 (citing *Homestore, Inc. v. Tafeen*, 888

A.2d 204, 211 (Del. 2005)). "Advancement is an especially important corollary to indemnification" because it provides corporate officials with immediate interim relief from the burden of paying for a defense. *Aguilar*, 344 S.W.3d at 46. "Although the right to indemnification and advancement are correlative, they are separate and distinct legal actions." *Id*. The right to advancement is not dependent on the right to indemnification. *Id*. "A now long line of recent cases enforces mandatory advancement provisions. These cases all stand for the proposition that a . . . bylaw . . . provision mandating advancement in no way renders the right to advances dependent upon the right to indemnity." *Id*. (citing Stephen A. Radin, *"Sinners Who Find Religion": Advancement of Litigation Expenses to Corporate Officials Accused of Wrongdoing*, 25 REV. LITIG. 251, 268–69 (2006)). The "ultimate purpose" of advancement is to "protect[] corporate officials' personal financial resources" from the significant expense in litigation resulting from the official's service. *L Series*, 571 S.W.3d at 878–79.

We construe advancement provisions under the normal rules of contract construction. *See id*. at 873 (citing *Aguilar*, 344 S.W.3d at 49.). We must ascertain the true intent of Restoration's members, as expressed in the Regulations, examining and considering the entire document to harmonize and give effect to all provisions so none are rendered meaningless. *See id*. We construe the Regulations "from a utilitarian standpoint bearing in mind the particular business activity sought to be

served." *Id.* And, we will avoid when possible and proper an inequitable, unreasonable, or oppressive construction. *Id.*

Restoration adopted its Regulations in 2004, including section 9.6, Indemnification Reimbursement of Expenses; Insurance. At that time, section 9.6 provided:

> To the fullest extent permitted by the Act:[2] (a) the Company shall indemnify each Member who was, is, or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding ("**Proceeding**"), any appeal thereof, or any inquiry or investigation preliminary thereto, *by reason of the fact that he or she is or was a Member*; (b) the Company shall pay or reimburse a Member for expenses incurred by such Member (i) in advance of the final disposition of a Proceeding to which such Member was, is, or is threatened to be made a party, and (ii) in connection with his or her appearance as a witness or other participation in any Proceeding. The Company shall indemnify and advance expenses to a Manager or officer of the Company to the extent required to do so by the Act or other applicable law. The Company, by adoption of a resolution of the Members, may indemnify and advance expenses to a Manager, officer, employee, or agent of the Company to the same extent and subject to the same conditions under which it may indemnify and advance expenses to Members under the preceding provisions. The provisions of this Section 9.6 shall not be exclusive of any other right under any law, provision of the Articles, or these Regulations, or otherwise. The Company may purchase and maintain insurance to protect itself and any Member, Manager, officer, employee, or agent of the Company, whether or not the Company would have the power to indemnify such person under this Section 9.6.

(Emphasis added).

---

[2] The Regulations define the "Act" to mean the "Texas Limited Liability Company Act, as the same may be amended from time to time."

Following the enactment of the Texas Business Organizations Code, the Regulations were amended as follows:

> Section 9.6 of the Regulations is hereby modified to provide that the indemnification, advance of expenses, and insurance which the Company is required to or does maintain shall include Members acting as a Member, Manager, and/or as an officer, agent, or employee of the Company to the fullest extent permitted by the Act and the Texas Business Organizations Code.

Prior to the 1997 amendments to the Texas Limited Liability Company Act, the Act provided that an LLC was permitted to indemnify members, managers, and others to the same extent a corporation was permitted to indemnify directors and others under the Texas Business Corporation Act and that an LLC must, to the extent indemnification was required under the Texas Business Corporation Act, indemnify members, managers, and others to the same extent.[3] Thus, applying these provisions in the LLC context, indemnification was mandated in some circumstances even if the articles of organization and regulations were silent regarding indemnification. On the other hand, there were certain standards and procedures that were not subject to variation in the articles of organization or regulations. In 1997, the indemnification provision of the Texas Limited Liability Company Act was amended to delete the reference to the Texas Business Corporation Act.

---

[3] Prior to September 1, 1997, TEX. REV. CIV. STAT. ANN. art. 1528n, art. 2.20A (expired) read as follows: "A limited liability company shall have power to indemnify managers, officers, employees, agents and others to the same extent a corporation may indemnify directors under the [Texas Business Corporation Act] and shall, to the extent indemnification is required under the [Texas Business Corporation Act] for directors, employees, agents and others, indemnify managers, officers, employees, agents and others to the same extent." Act of May 13, 1997, 75th Leg., R.S., ch. 375, § 58, 1997 Tex. Gen. Laws 1516, 1565.

Under current Texas law, an LLC's governing documents may adopt the business organizations code's advancement provisions or "contain other provisions, which will be enforceable, relating to: (1) indemnification; [or] (2) advancement of expenses." TEX. BUS. ORGS. CODE § 8.002(b). Importantly, section 8.105(d) expressly permits advancement of reasonable expenses to both current and *former* officers/governing persons. And, as courts have made clear, advancement is required if a company's governing documents so state. *See L Series*, 571 S.W.3d at 874–75; *Aguilar*, 344 S.W.3d at 49–51.

Here, section 9.6(a) of the Regulations requires indemnification to "each Member . . . made a party to any threatened, pending, or completed action, suit, or proceeding ('Proceeding') . . . by reason of the fact that he or she is or was a Member," and part (b) states Restoration "shall pay or reimburse . . . expenses incurred by such Member (i) in advance of the final disposition of a Proceeding to which such Member was . . . made a party[.]" The capitalized term "Proceeding" used in the advancement provision is defined in part (a) and refers to an "action, suit, or proceeding" to which a member was made a party "by reason of the fact that he or she is or was a Member." *See Lechuga v. Tex. Emps.' Ins. Ass'n*, 791 S.W.2d 182, 185 (Tex. App.—Amarillo 1990, writ denied) (noting the term "such" is an adjective that "refer[s] to the last antecedent," or "what has been specified" or "already particularized"). The advancement provision incorporates that definition of a "Proceeding," stating Restoration must pay the "expenses incurred by such Member

–10–

. . . [in] a Proceeding to which such Member was . . . made a party," meaning any action to which a member is "made a party . . . by reason of the fact that he or she is or was a Member." *See*, *e.g.*, *Subsea 7 Port Isabel, LLC v. PILOT*, *Inc.*, 593 S.W.3d 859, 879 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied) (plaintiff's "construction of the phrase 'any such proceeding' ignores the word 'such,' . . . which clearly indicates that the parties intended to refer back to the two types of proceedings mentioned in the prior paragraph"); *Shriners Hosp. for Children v. McCarthy Bros. Co.*, 80 F. Supp. 2d 707, 711 (S.D. Tex. 2000) ("[A] review of the entire passage . . . demonstrates that the term 'such leaks' is properly used to reference a previously mentioned category of things, namely the leaks that gave rise to the [proceeding].").

Restoration maintains the indemnification clause, section 9.6(a) of the Regulations, and the advancement clause, section 9.6(b) of the Regulations, must be interpreted separately. According to Restoration, the two clauses distinguish between current and former members and the indemnification clause provides for payment to both current and former members, while the advancement clause applies only to current members. Restoration claims we must focus on the elements of the advancement clause that provide for advancement of fees only to "Members," which because it is not defined and is in the present tense, must be a current member. We are not convinced by Restoration's argument.

In *Weinstock v. Lazard Debt Recovery GP, LLC*, the court interpreted a similar advancement provision and held that it applied to a former member. No. CIV.A 20048, 2003 WL 21843254, at *1–7 (Del. Ch. Aug. 8, 2003) (mem. op.). The defendants argued that their advancement obligation did not apply to former members because, while the indemnification provision applied to a "person who was or is a party to any . . . action, suit or proceeding . . . by reason of the fact that such person is or was a member," the advancement provision did not contain such "language granting advancement to a person who 'is or was'" a member. *Id*. at *6. In rejecting that argument, the court explained that the advancement provision referred to "members . . . 'defending such . . . proceeding[s],'" which created an "obvious linkage back to the proceedings defined in [the indemnity provision]"— *i.e*., those in which a person was made a party "by reason of the fact that such person is or was a member." *Id*. The court held that, given the obvious relationship between the provisions, the absence of the "is or was" language in the advancement provision was to avoid redundancy, and the advancement provision applied to former members. *Id*.

The same is true here. The use of the capitalized term "Proceeding" in the Regulations' advancement provision is an "obvious linkage" to the immediately preceding indemnity provision that defines such "Proceeding" as an "action, suit, or proceeding" to which a Member is or was "made a party . . . by reason of the fact that he or she is or was a Member." Like in *Weinstock*, given this "obvious linkage"

between the provisions, the absence of the "is or was a Member" language in the advancement provision was merely to avoid redundancy, as the term "Proceeding" was already defined to encompass actions against former members. Further, the advancement provision's use of the term "such Member" creates an even stronger linkage than the one in *Weinstock*, as there is a direct relationship between the "is or was a Member" language of the indemnity provision and the advancement provision.

Restoration raises two remaining arguments: the Regulations are ambiguous and summary judgment is therefore improper; and public policy prevents enforcement of the advancement provision.

With respect to Restoration's contention that the Regulations are ambiguous, Restoration maintains summary judgment is improper when a contract contains an ambiguity. And, according to Restoration, as demonstrated in its briefing regarding whether the advancement clause was triggered in this case, Restoration has a reasonable interpretation of the advancement clause and relator's differing interpretation is unreasonable, or at best creates an ambiguity. Consequently, according to Restoration, the trial court did not err by denying summary judgment.

But contractual ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Here, applying the plain language of the contract, the advancement clause clearly applies to both current and former members. To read

the contract as Restoration does would require us to disregard the definition of "Proceeding" as set out in section 9.6(a) (the indemnification clause) as including "threatened, pending, or completed action, suit, or proceeding . . . any appeal therefor, or any inquiry or investigation thereto, by reason the fact that he or she is or was a member" with respect to section 9.6(b) and infer that "such Member" in section 9.6(b) must mean a current member. Thus, Restoration's interpretation of the contract is not reasonable and we conclude the contract is not ambiguous.

With respect to public policy concerns, Restoration contends that public policy bars relief here because (1) advancement of fees to relator would radically skew the litigation dynamics, and (2) relator has unclean hands.

In support of its argument that advancement of fees would skew the litigation dynamics, Restoration relies on *Travelers Indemnity Co. v. Mayfield*, 923 S.W.2d 590 (Tex. 1996). In that case, the trial court appointed an attorney to represent the claimant in a workers' compensation case and ordered the workers' compensation insurer to pay opposing counsel's fees as the case progressed. *Id.* at 591. Although not challenging the appointment itself, the insurer filed a writ of mandamus contending the trial court abused its discretion and caused irreparable harm by requiring it to pay for the claimant's attorney. *Id.* The supreme court agreed. *Id.* In making that determination, the supreme court reasoned that in Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties. The supreme court explained the

–14–

workers' compensation statute did not provide for recovery of attorney's fees under the circumstances of the case and there was no agreement regarding attorney's fees between the parties. *Id*. at 593. Further, the supreme court concluded that although exceptional circumstances might allow for the trial court to appoint counsel in order for the court to carry on its essential, constitutional function, this was not such a case. *Id*.

Restoration's reliance on *Travelers* is misplaced. Unlike the situation in *Travelers*, there is a contractual agreement between the parties not only allowing for recovery of attorney's fees, but expressly providing for advancement of such fees. Restoration does not otherwise explain how enforcement of the Regulations would unfairly skew the proceedings. Furthermore, Restoration's argument runs counter to Texas's strong public policy favoring preservation of the freedom to contract. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811–12 (Tex. 2012). The principle of freedom of contract requires us to recognize that "sophisticated parties have broad latitude in defining the terms of their business relationship," and courts are obliged to enforce the parties' bargain according to its terms and may not rewrite a contract under the guise of interpretation. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 889 (Tex. 2021) (per curiam) (citations omitted).

We also disagree with Restoration's argument that because relator allegedly has unclean hands, he is disqualified from seeking equitable relief and from

–15–

enforcing the advancement clause. Restoration concedes that Delaware courts enforce advancement clauses even when, as here, a former member is sued for misconduct committed while he or she was a member. But, notwithstanding Delaware law and without acknowledging Texas law to the contrary, *see L Series*, 571 S.W.3d at 875, Restoration concludes without support that we should declare the advancement clause void as violating public policy because Restoration has "*alleged* [relator] is guilty of misappropriating trade secrets, violating the Texas Theft Liability Act, and breach[ing] his fiduciary duties." But all lawsuits involve allegations of wrongdoing by the other party; Restoration's argument would render the contract term meaningless and predetermine the merits of its claim. *See Reddy v. Elec. Data Sys. Corp.*, No. CIV.A. 19467, 2002 WL 1358761, at *9 (Del. Ch. June 18, 2002) (mem. op.) (noting that corporation's unclean hands theory "would turn every advancement case into a trial on the merits of the underlying claims of official misconduct"). Whether relator engaged in wrongdoing is a question for the fact-finder to resolve at the end of the case, not at this preliminary stage.

Restoration's allegations of misconduct do not change the nature of the right relator has to advancement of fees. *See L Series*, 571 S.W.3d at 875 (citing *Reddy*, 2002 WL 1358761, at *5–6). It is true that corporate advancement practice has an "admittedly maddening aspect." *L Series*, 571 S.W.3d at 874. That is because, at the time that an advancement dispute ripens, it is often the case that the corporate board has drawn harsh conclusions about the integrity and fidelity of the corporate official

seeking advancement. *Id*. The board may well have a firm basis to believe that the official intentionally injured the corporation and is therefore reluctant to advance funds for his defense, fearing that the funds will never be paid back and resisting the idea of seeing further depletion of corporate resources at the instance of someone perceived to be a faithless fiduciary. *Id*. But the Delaware courts have determined that to "give effect to this natural human reaction as public policy would be unwise" because the possibility exists that the company's allegations are untrue or cannot be proven. *Id*. In that circumstance, it would be difficult to conceive of an argument that would properly leave the corporate official holding the bag for all of his legal fees and expenses; moreover, to do so would make the company's prelitigation promise illusory. *Id*. Thus, Delaware courts have "often been required to uphold the indemnification and advancement rights of corporate officials accused of serious misconduct." *Id*.; *see also Barrett v. Am. Country Holdings, Inc*., 951 A.2d 735, 737 (Del. Ch. 2008) ("The very purpose of an advancement right is to enable a corporate official to protect herself against claims of official wrongdoing.").

We agree with the Fort Worth court's decision to follow Delaware law in this situation and conclude Restoration's arguments to the contrary lack merit. We reject Restoration's contention that we should declare the advancement provision unenforceable because relator's alleged conduct was improper and against public policy. *See L Series*, 571 S.W.3d at 875.

Finally, we agree with the El Paso court that in the context of the denial of a right of advancement, there is no adequate remedy by appeal. *See Aguilar*, 344 S.W.3d at 55. By its very nature, the right to advancement of expenses can be satisfied only during the course of the trial court proceedings. *See id.* (noting advancement claim would effectively be moot at the conclusion of the case). Mandamus is appropriate relief to correct an order denying advancement of a claimant's fees because the act of proceeding to trial without advancement would defeat the substantive right at stake. *Id*. (citing *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding)).

## Conclusion

We conditionally grant the petition for writ of mandamus. We order the trial court to vacate its order denying relator's motion for summary judgment and render an order granting the motion. The writ will issue only in the event the trial court fails to comply with this opinion and the order of this date.

/Erin A. Nowell//

ERIN A. NOWELL
JUSTICE

210460f.p05