COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JOSEFINA MAESE NEVAREZ and | | No. 08-06-00333-CV |
| RUDOLFO MAESE, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | County Court at Law No. 3 |
| v. | § | |
| | | of El Paso County, Texas |
| HERB EHRLICH, AS TRUSTEE, | § | |
| | | (TC # 2003-3156) |
| Appellee. | § | |

**O P I N I O N**

Josefina Maese Nevarez and Rudolfo Maese appeal from a summary judgment granted in favor of Herb Ehrlich, Trustee. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

A number of people, including Roberto Horcasitas Maese, purchased annuity contracts from First Service Life Insurance Company (First Service). When First Service failed, it was placed in receivership on December 1, 1988. Pursuant to Article 21.28 of the Texas Insurance Code, the title to all of the property of First Service, including rights of action, vested in the receiver on that date. Several lawsuits were filed by aggrieved parties seeking damages. El Paso Electric, which had bought $70 million in annuities from First Service, filed suit in Travis County against the receiver seeking a declaratory judgment that it had a valid, perfected and enforceable security interest in and to certain collateral.[1] First Service also sought repayment from Maury Kemp and Triangle Electric of a $12

---

[1] This suit was filed in the 53rd District Court of Travis County and is styled *El Paso Electric Company v. First Service Life Insurance Company, et al.* (cause number 451,497). It was referred to in the proceedings below as "Cause No. 451,497."

million loan. Other individual annuitants sought to perfect their claims which totaled about $12.8 million. Herb Ehrlich represented twenty-eight of those annuitants, including Jorge Gonzalez-Felix, Individually and as Independent Executor of the Estate of Roberto Maese-Horcasitas. Another group was represented by attorney Douglas Smith. Ehrlich's and Smith's clients filed suit against El Paso Electric and other defendants. That suit contained RICO allegations and it was removed to federal court.[2] The suits were eventually resolved by three settlement agreements. On April 14, 1993, the 53rd District Court incorporated and approved those three settlement agreements in an "Order Approving Compromise of Claims" filed in cause number 454,774 in the 53rd District Court in Travis County. The court's order referred to various parties as follows:

"First Service"-- Jorge A. Gutierrez, P.C. as Special Deputy Receiver for First Service Life.

"Creditor-Defendants"-- a group of creditors of First Service who were owners of annuities and had filed a proof of claim with the receiver, and who were represented by Douglas Smith or Herbert Ehrlich, P.C.

"Claimants" -- four persons who were claimants to annuities of Roberto Maese-Horcasitas, deceased, and who were represented by Herbert Ehrlich, P.C.

"Non-Settling Creditor-Defendants" -- Jose Sanchez-Soriano, Appellant Josephina Maese-Nevarez, Marisa P. de Olivas, Fabiola Maese de Crespo and Appellant Rodolfo Maese-Nevarez, all of whom alleged claims against El Paso Electric in the RICO Action.

The trial court found that the claims being asserted by the Creditor-Defendants, the Claimants, and the Non-Settling Creditor-Defendants against El Paso Electric Company in the RICO Action arose, if at all, out of injuries allegedly suffered by First Service, and such claims were the property and assets of First Service. The three separate settlement agreements were attached to the order as Exhibit A, Exhibit B, and Exhibit C. With respect to Exhibit B, which is at issue here, the judgment

---

[2] That suit was removed to the Western District of Texas, El Paso Division and was styled *Pedro Meneses, et al. v. Maury Page Kemp, et al.*, Civil Action No. EP-90-CA-247H. It was referred to in the proceedings below as "the RICO Action."

states:

> It is FURTHER ORDERED, ADJUDGED AND DECREED that the Settlement Agreement between El Paso Electric Company, the Creditor-Defendants and the Claimants, in the form attached hereto as Exhibit 'B' is approved, and shall be binding upon El Paso Electric Company and the Creditor-Defendants, the Claimants, their agents, employees, officers, representatives, successors and assigns.

Under this settlement agreement, the Creditor-Defendants and Claimants would dismiss their suit against El Paso Electric under Federal Rule of Civil Procedure 41(a)(1).[3] The order further provided that upon approval of the Settlement Agreement by the Bankruptcy Court in El Paso Electric's pending Chapter 11 proceeding, the Special Deputy Receiver, the Creditor-Defendants, and the Claimants were to file a motion in the RICO Action asserting that the Special Deputy Receiver owns the claims of the Non-Settling Creditor-Defendants against El Paso Electric and request dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).[4]

In the settlement agreement referred to as Exhibit B, El Paso Electric made the following agreement:

> EPE will vigorously and in good faith prosecute to conclusion, by final non-appealable order or, in its sole discretion, by a settlement, the claim it has asserted pursuant to Tex.Civ.Prac.&Rem.Code § 105.001 et. seq. in Cause No. 451,497 (the 'EPE § 105 Claim') at its own expense. If and when EPE makes any recovery, pursuant to its EPE § 105 Claim, EPE will retain, and will be entitled to retain, one-third of the gross amount of such recovery, and will pay the remaining two-thirds to a trust account for the benefit of the Creditor-Defendants and the Claimants, naming Douglas C. Smith and Herbert Ehrlich, as trustees. The trustees shall disburse such trust funds as follows: first, to reimburse the Creditor- Defendants and the Claimants for all costs and expenses paid or advanced by them in pursuit of their claims in the RICO Action, the Receivership Proceeding and Cause No. 451,497; and thereafter, **to all the holders of approved annuity claims pro rata in proportion to the original**

---

[3] Federal Rule of Civil Procedure 41(a)(1) permits a plaintiff to voluntarily dismiss an action without a court order where the plaintiff files notice of dismissal before the opposing party serves either an answer or a motion for summary judgment or where the plaintiff files a stipulation of dismissal signed by all parties who have appeared. FED.R.CIV.P. 41(a)(1).

[4] Federal Rule of Civil Procedure 41(a)(2) provides that, except as permitted by Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order on terms the court considers proper. FED.R.CIV.P. 41(a)(2).

**amount of their approved claims in the Receivership Proceeding**.  The Creditor-Defendants and the Claimants acknowledge and agree that, if the EPE § 105 Claim is denied by a final non-appealable order of a court, then no sum shall be paid to them pursuant to this paragraph, and EPE shall have no further obligation to the Creditor-Defendants or the Claimants.  [Emphasis added].

El Paso Electric eventually recovered funds under the "EPE §105 Claim" and it paid two-thirds of that amount to Douglas Smith and Herbert Ehrlich as ordered.  Ehrlich received approximately $1.167 million.  Smith and Ehrlich accounted for expenses and paid the remaining sums to their respective clients.  Ehrlich paid approximately $800,100 to his clients.  No monies were paid to the Non-Settling Creditor-Defendants.

Appellants later learned of the disbursal by Ehrlich and filed suit against him asserting that he breached his fiduciary duty to them.  Ehrlich filed a motion for summary judgment alleging that he did not owe Appellants a fiduciary duty because he did not represent them in the prior suit and they had refused to participate in the settlement agreement.  Appellants also filed a motion for summary judgment on their claim.  The trial court granted summary judgment in favor of Ehrlich.

In a single issue, Appellants contend that the trial court incorrectly determined that Ehrlich did not owe them a fiduciary duty.  Pointing out that Appellants were not parties to the settlement agreement, Ehrlich counters that Appellants' interpretation fails to give effect to the entire agreement and leads to the absurd result that the non-settling annuity holders were put in a better position than the settling annuity holders.

*Standard of Review*

The standard of review for traditional summary judgment is well established.  *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985).  The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.*,

921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Duran*, 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*.; *Duran*, 921 S.W.2d at 784. A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Southwestern Electric Power Company v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Garcia v. El Paso Ltd. Partnership*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

*Construction of Settlement Agreements*

Settlement agreements are controlled by rules of interpretation and construction applicable to contracts. *Stevens v. Snyder*, 874 S.W.2d 241, 243 (Tex.App.--Dallas 1994, writ denied). The interpretation of an unambiguous contract is a question of law. *MCI Telecommunications Corp. v. Texas Utilities Electric Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999). In construing a written contract, the court's primary concern is to ascertain the parties' true intentions as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id*. In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms. *Id*.

If the written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id*. However, a contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id*. at 393-94. Not every difference in the interpretation of a contract amounts to an ambiguity. *Forbau*, 876 S.W.2d at 134. Mere disagreement over the meaning of a provision in the contract does not make the terms ambiguous. *Richardson Lifestyle Association v. Houston*, 853 S.W.2d 796, 800 (Tex.App.--Dallas 1993, writ denied). Likewise, uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract ambiguous. *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 777 (Tex.App.--Dallas 1990, writ denied). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Id*.

The settlement agreed provided that El Paso Electric was to pay two-thirds of the recovery, if any, "to a trust account for the benefit of the Creditor-Defendants and the Claimants, naming Douglas C. Smith and Herbert Ehrlich, as trustees." Appellants argue that the following sentence creates a trust and establishes that they are beneficiaries because it refers to all the holders of approved annuity claims:

> The trustees shall disburse such trust funds as follows: first, to reimburse the Creditor-Defendants and the Claimants for all costs and expenses paid or advanced by them in pursuit of their claims in the RICO Action, the Receivership Proceeding and Cause No. 451,497; and thereafter, **to all the holders of approved annuity claims pro rata in proportion to the original amount of their approved claims in the Receivership Proceeding**.

But Appellant's interpretation ignores the previous sentence which clearly states that the trust

account is for the benefit of the Creditor-Defendants and the Claimants, namely, the clients of Ehrlich and Smith. The sentence relied upon by Appellants necessarily refers to the Creditor-Defendants and Claimants who are holders of approved annuity claims. The more general statement does not control the specific.

In support of their argument, Appellants also rely on testimony by the special receiver at the hearing on entry of judgment. We do not consider his extraneous statements in construing the settlement agreement because the intent of the parties can be found in the contract itself. The unambiguous language of the settlement agreement does not support Appellants' interpretation. The trial court correctly determined that Ehrlich did not owe Appellants a fiduciary duty. We overrule the sole issue on appeal and affirm the judgment of the trial court.

July 29, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating