COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| MARIA CONCEPCION LOPEZ-FRANCO, | § | No. 08-08-00343-CV |
|  | § | Appeal from |
| Appellant, | § | 171st District Court |
| v. | § | of El Paso County, Texas |
| BLANCA ESTELLA RIVERA HERNANDEZ, appearing as representative of the Estate of BARBARA A. FRANCO, A Deceased Minor, | § | (TC # 2007-4145) |
|  | § |  |
| Appellee. |  |  |

## **O P I N I O N**

This appeal involves competing claims to a life insurance policy between the insured's mother and the mother of his deceased daughter who was born out of wedlock. As counsel for Appellant suggests, "[i]t is a correct assumption that Lopez and Hernandez[1] do not like each other. For the reasons that follow, we affirm.

### **FACTUAL BACKGROUND**

This is an interpleader case filed by American General Life and Accident Insurance Company involving the distribution of life insurance proceeds. A $500,000 life insurance policy insured the life of Luis A. Franco-Lopez. The application named three beneficiaries: (1) Maria Concepcion Lopez, the insured's mother and Appellant in these proceedings; (2) Luis Anaya, the insured's son; and (3) Barbara A. Franco, the insured's daughter. The insurance contract specifically provided that

---

[1] We will likewise refer to Appellant as Lopez and Appellee as Hernandez.

the application is part of the policy.[2]

The insured died on December 15, 2003, having performed all obligations under the policy. Upon American General's receipt of proof of his death, the proceeds became due and payable. Lopez demanded American General pay the entire amount to her as first beneficiary. American General paid $166,666.67 to Lopez as her uncontested one-third share of the proceeds. In September 2007, American General filed an interpleader action as to the remaining two-thirds. All three parties listed as defendants filed answers, and the court entered an agreed order granting the request for interpleader. American General deposited the remaining $350,957.25 into the registry of the court until such time as the competing claims were settled.

At the time of the insured's death, all three beneficiaries were living. Eleven months later, Barbara died at the tender age of three years.[3] Hernandez is Barbara's mother. At the time suit was filed, no administration of Barbara's estate had been taken out.[4]

### Rule 11 Agreement

On February 2, 2008, Lopez and Maria Anaya entered into a Rule 11 agreement with regard to the insurance proceeds. They agreed that one-half of the money in the court registry be distributed to Lopez. After payment of attorneys' fees and costs, Lopez would then deposit the remainder of the money into an interest bearing account in the name of Victor Falvey, Luis's attorney ad litem. Falvey, as trustee, would then pay himself fees and release any interest earned on the account to

---

[2] Luis and Barbara were half siblings. Luis is the son of the decedent and his wife, Maria Anaya. The decedent evidently had an affair with Hernandez which led to the birth of a daughter, Barbara.

[3] Tragically, little Barbara and her father were shot in the same attack in our sister city of Juarez.

[4] In its interpleader motion, American General named Lopez, Luis's mother, and Hernandez as defendants. Hernandez was named individually and as representative of Barbara's estate because she was Barbara's sole surviving parent and was a possible beneficiary under the policy. Hernandez later abandoned any claim in her individual capacity.

Luis's mother on a monthly basis. Luis would directly receive 25 percent of the principal when he turned eighteen.. Falvey would retain the remaining 75 percent, distributing half to Luis when he turned twenty-two and the other half when he turned twenty-six. Lopez also agreed to pay Maria Anaya $5,000.

### *Competing Summary Judgment Motions*

The crux of Hernandez's argument is that the insurance policy named three *first* beneficiaries: Lopez, Luis, and Barbara. Lopez emphasizes that Hernandez was not named as a beneficiary in the policy, in the application for life insurance, or in any other documentation. From this, Lopez concludes that Hernandez is not entitled to recover in her individual capacity. Lopez also alleges that because there was no probate of Barbara's estate, or an order from a court of competent jurisdiction naming Hernandez as representative of the estate, Hernandez is not entitled to recover in a representative capacity either. Lopez also maintains that she and the deceased agreed to obtain the life insurance policy together, and that she agreed to make--and did make--all the monthly premiums on the policy. She alleges further that the deceased intended her to be the primary beneficiary under the policy so that she could care for his children in the event of his death. The trial court granted Hernandez's motion, determining that (1) she was properly before the court as representative of her daughter's estate, and (2) there was no need for administration of the estate.

The final judgment was entered on September 24, 2008.

## STANDARD OF REVIEW

To prevail on summary judgment, the movant has the burden of proving that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut plaintiff's cause. *Cathey*, 900 S.W.2d at 341. In deciding whether there is a disputed material fact precluding summary judgment, we take as true evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in its favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A matter is conclusively established if reasonable minds could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005). Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment proof presented by both sides and determine all questions presented. *See CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). The reviewing court should render the judgment that the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## STANDING AND CAPACITY

Because of the overlapping themes of the issues presented, we will address Lopez's first seven issues together. Each of these hinges on the same argument: that administration of Barbara's estate was necessary and therefore, because Hernandez did not initiate probate proceedings rendering her a court appointed representative, she did not have standing or capacity to represent her daughter's

estate.[5]

It is undisputed that Hernandez was never appointed representative of Barbara's estate. In arguing their respective theories, both parties discuss *Shepherd v. Ledford*, 962 S.W.2d 29 (Tex. 1998). There, the court held that an heir may appear as representative of the decedent's estate if the heir pleads and proves that no administration of the decedent's estate is pending or necessary. *Id.* at 31. Lopez insists that *Shepherd* does not apply because that case involved a survival action rather than a claim to insurance proceeds. Further, regardless of *Shepherd*, a probate proceeding was necessary here because Barbara died leaving property (a claim to a portion of the insurance proceeds) and that "she left debts owing and she left heirs."

Hernandez counters that *Shepherd* is not limited to survival actions because: (1) the case cited by *Shepherd* involved a lease between the plaintiff's decedent and the defendants; and (2) to limit *Shepherd* in such a way creates a presumption favoring probate in direct contradiction with the Texas Probate Code.

> [n]o administration of any estate shall be granted unless there exists a necessity therefor, such necessity to be determined by the court hearing the application. Such necessity shall be deemed to exist if two or more debts exist against the estate, or if or when it is desired to have the county court partition the estate among the distributees.

TEX.PROB.CODE ANN. § 178(b)(West Supp. 2010).

Lopez provided an affidavit that she paid for Barbara's funeral expenses, thus creating a debt of Barbara's estate. But there is no evidence of a promise to repay the money, nor could Barbara have made such a promise at three years of age. While Barbara did leave her mother and a half brother as potential heirs, the half brother referred to by Lopez in this context is not Luis, nor was

---

[5] Although Lopez argues issues of standing and capacity, the Supreme Court has clarified that the true issue is capacity. *See Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 850-851 (Tex. 2005).

the decedent his father. There is no evidence that the two potential heirs desired to have Barbara's estate partitioned or that they had any conflicting interests or claims to the proceeds. We conclude that no administration of Barbara's estate was necessary and that Hernandez had standing and capacity to bring the suit. We overrule Issues One through Seven.

## JURISDICTION

In Issue Eight, Lopez contends that the trial court lacked jurisdiction over any claim by Hernandez as representative of the Estate, this time because distribution of insurance proceeds is not within the concurrent provisions of the Texas Probate Code. In support of the argument that the probate court had exclusive jurisdiction over the case, Lopez relies on Section 5(d), which, prior to its repeal in 2009, provided that:

> In those counties in which there is a statutory probate court, all applications, petitions, and motions regarding probate or administrations shall be filed and heard in the statutory probate court.

TEX.PROB.CODE ANN. § 5(d)(West 2003). Hernandez responds that probate courts only have exclusive jurisdiction over probate proceedings. She contends that an interpleader action in which one of the claimants is the estate of the decedent is not a "probate proceeding" within the meaning of the Probate Code. Rather, it is a proceeding over which district courts have concurrent jurisdiction. She directs us to Section 5(e), which was not repealed, and Section 4H(4):

> 5(e) A statutory probate court has concurrent jurisdiction with the district court in all personal injury, survival, or wrongful death actions by or against a person in the person's capacity as a personal representative, in all actions by or against a trustee, in all actions involving an inter vivos trust, testamentary trust, or charitable trust, and in all actions involving a personal representative of an estate in which each other party aligned with the personal representative is not an interested person in that estate. For purposes of this section, 'charitable trust' includes a charitable trust as defined by Section 123.001, Property Code.

.    .    .

4H: A statutory probate court has concurrent jurisdiction with the district court in:

.  .  .

(4) an action involving a personal representative of an estate in which each other party aligned with the personal representative is not an interested person in that estate.

TEX.PROB.CODE ANN. §§ 5(e); 4H(4)(West Supp. 2010)

The interpleader action listed three parties as defendants: Lopez, Luis, and Hernandez as representative of Barbara's estate. There was no evidence that Lopez or Luis had any claims against Barbara's estate which would make them "interested" persons. We overrule Issue Eight.

## AMBIGUITY

In Issue Nine, Lopez challenges the trial court's finding that no ambiguity existed in the application for insurance. She contends that because two sections of the application are irreconcilable, there is a genuine issue of material fact which must be submitted to a jury for resolution. In short, she claims that because she and Hernandez interpret the application differently, ambiguity is established as a matter of law. We disagree.

An insurance policy is a contract, and it is governed by the same rules of construction applicable to all contracts. *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 740-41 (Tex. 1998). The court's primary goal is to give effect to the written expression of the parties' intent. *Id*. at 741. The decedent's policy provided that, "[a]ll surviving Beneficiaries of the same class will share equally in any payment to that class, unless otherwise stated." The Application for Life Insurance (defined as part of the insurance policy), has two portions which, when combined, give rise to this dispute. First, section fourteen is entitled, "Beneficiary, with right to change." Directly to the right of the title, the words "see remarks" appear in parenthesis. In the box for section fourteen, there are two lines: "a. First" and "b. Second." Above the line to designate the name,

relationship, and age of the first beneficiary, the deceased wrote, "Maria C. Lopez-Franco mother (56)." Between the lines for first and second beneficiaries he wrote, "Luis A. Franco-Anaya son," and on the line to designate second beneficiaries he wrote, "Barbara A. Franco Rivera daughter." The "Remarks" section on page four of the application contains the following language:

<u>First Beneficiaries</u>

(mother)
MA. Concepcion Lopez [sic] Franco
Luis Antonio Franco Anaya     (son &
Barbara Aleida Franco Rivera    daughter)

Whether a contract is ambiguous is a question of law. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and a court should construe the contract as a matter of law. *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). We construe an unambiguous contract according to the plain meaning of its express wording. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985). Unambiguous contracts are enforced as written. *Heritage Resources, Inc.*, 939 S.W.2d at 121.

"A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id*. However, a contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Nevarez v. Ehrlich*, 296 S.W.3d 738, 742 (Tex.App.--El Paso 2009, no pet.). Not every difference in the interpretation of a contract amounts to an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). Mere disagreement over the meaning of a provision in the contract does not make the terms ambiguous. *Richardson Lifestyle Association v. Houston*, 853 S.W.2d 796, 800

(Tex.App.--Dallas 1993, writ denied). Likewise, uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract ambiguous. *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 777 (Tex.App.--Dallas 1990, writ denied). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Id.*

We determine whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). If a contract is determined to be ambiguous, then a court may consider extraneous evidence to ascertain the true meaning of the instrument. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995).

An ambiguity may be either patent or latent. *Id.* A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.* When a contract contains an ambiguity, either patent or latent, the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394; *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 224 S.W.3d 369, 379 (Tex.App.--Houston [1st Dist.] 2006, no pet.). The trier of fact must resolve the ambiguity by determining the true intent of the parties. *Coker*, 650 S.W.2d at 394-95.

Considering the contract as a whole in light of the circumstances when the parties entered it, we conclude that the contractual terms surrounding the designation of beneficiaries are unambiguous. *See Breitenfeld*, 167 S.W.3d at 841; *Universal Health Servs., Inc.*, 121 S.W.3d at

746; *McLaughlin*, 943 S.W.2d at 430. The contract is worded in such a way that it can be given a certain or definite legal meaning or interpretation. *See Breitenfeld*, 167 S.W.3d at 841; *McLaughlin*, 943 S.W.2d at 430. Lopez, Luis, and Barbara were intended to serve equally as first beneficiaries. We overrule Issue Nine.

## DISBURSEMENT OF FUNDS

In Issue Ten, Lopez contends the trial court erred in ordering distribution to be made to Hernandez and Richard M. Zamora jointly because Zamora was not a party to and had no claim against the policy proceeds. Hernandez counters that even if Lopez is correct, she has not been harmed by the error. We agree. To justify reversal, an Lopez must demonstrate that not only did error occur, it was harmful. *Bergholtz v. Southwestern Bell Yellow Pages, Inc.*, 324 S.W.3d 195, 198 (Tex.App.--El Paso 2010, no pet.)(a trial court's error of law is reversible only if it causes harm); TEX.R.APP.P. 44.1. We overrule Issue Ten and affirm the judgment of the trial court.


April 20, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.